GULF & S. I. R. Co. *v.* McGLOHN.

(Division B.   Oct. 24, 1938.)

[184 So. 71.   No. 33291.]

467

Gardner & Backstrom, of Gulfport, May & Byrd, of Jackson, E. C. Craig and Vernon W. Foster, both of Chicago, Ill., and Clinton H. McKay and Lucius E. Burch, Jr., both of Memphis, Tenn., for appellant.

468

**Jo Drake Arrington** and **Bidwell Adam,** both of Gulf-port, for appellees.

Argued orally by **J. L. Byrd**, for appellant, and by **Jo Drake Arrington**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

This suit was filed in the circuit court of Harrison by

F. N. McGlohn against the Gulf & Ship Island Railroad Company, seeking to recover $12,500 for loss of salary with interest, and $5,000 for loss of pension rights resulting to appellee formerly employed as a conductor by appellant because of his alleged wrongful discharge from the employ of appellant on June 4, 1932. McGlohn was a member of the Order of Railway Conductors, and complained that he was discharged without just cause, and without strict compliance by appellant with article 30 of the Schedule and Regulations and rates of pay agreed to by appellant and the Order of Railway Conductors.

The contract upon which the plaintiff predicated his right was a contract between the Order of Railway Conductors and the railroad company, governing the employment of such employees under what is known as collective bargaining, a contract made by the Order of Railway Conductors, being for the benefit of the individual conductors employed by the railroad company.

It was charged in the declaration that in the year 1924 the appellee and other employes of the appellant railroad company, entered into an agreement with appellant as to the rules, rates and conditions which would apply to them mutually, and govern their relationship, defining their rights, responsibilities and duties, and the circumstances of this employment, and particularly the manner in which this employment should be terminated by the defendant company. This schedule of rules, rates and conditions was adopted as agreed upon by the defendant and its employees in the year 1924, becoming effective on December 17th, 1924, as it has been continuously since that time. A copy of the contract was exhibited with the declaration, section 30 thereof providing as follows: "Investigations. Conductors will not be demerited, disciplined or discharged without just cause. When such action shall become necessary the accused shall be duly apprized in writing, within ten days after knowledge of the occurrence, the nature of the charge or charges that are to be brought against him; and within ten days after

such notification he will be given an investigation by the proper officer of the railroad at which time all evidence in the case will be kept, authenticated by both parties, and made the basis for any discipline that may be administered, or an appeal to a higher officer. The accused will be permitted to attend the investigation, hear all of the evidence submitted and be represented by fellow employees of his own selection. Within five days after the investigation closes, the proper officer will render a decision and advise the accused in writing the penalty imposed. If the decision is unsatisfactory, the accused, through his representative, will have the right to appeal to higher officers of the railroad. In the event the charge or charges are not proven the accused will be promptly restored to the service with full rights and paid full wages for any time he may have lost as a result of the charge or investigation.''

The appellee, plaintiff in the court below, averred that he had entered the service of appellant about the first of June, 1907, had been continuously in its service until the 4th of June, 1932, when he was discharged. That he had at all times performed his duties with fidelity, and efficiently and continuously; that notwithstanding his rights under his contract of employment, and particularly under article 30 above mentioned, that appellant, on the 4th of June, 1932, discharged him without just cause, in violation of his contractual rights and appellant's contractual obligations, since which time it has continuously refused to retain him in its employment or to pay him his salary; that he has at all times since his discharge been eager, ready, able and willing to reenter appellant's service as conductor.

The appellee further averred that he had acquired certain pension rights by his services aforesaid, which rights claimed by him to have been acquired under the pension provisions, seem to have been under a separate rule or contract from that referred to above.

The appellant filed a number of special pleas, one of

which was that under article 35 of the contract between the appellant and the Order of Railway Conductors it was provided that: ''The rules, rates and conditions herein set forth constitute an agreement and will supersede all former agreements, rules and interpretations thereon and will not be changed or abrogated until after thirty days' notice in writing by either party; except that it is understood that further increases in rates, or changes in arbitrary allowances, rules or conditions, issued by the United States Railroad Labor Board will apply. The rules, rates and conditions herein set forth constitute an agreement effective Dec. 17th, 1924, and will supersede any former agreements, rules or interpretations thereon, continuing in effect for one year, and will not be thereafter changed or abrogated until after thirty days' notice in writing by either party to the other.''

This plea was demurred to, and the demurrer was sustained. It is argued here that under this provision the appellant had no right to discharge the appellee without reason at the end of a thirty-day period; or that the appellee would have no right after the expiration of thirty days to a continuation of his employment or salary.

The agreement appears on its face to have reference to the termination of the contract between the Order of Railway Conductors and the appellant, and not to the discharge of individual conductors. But if it should mean that the railroad company had a right on thirty days' notice, to discharge the appellant, it could only do so under conditions contracted for in section 30 above quoted. It would appear that the discharge would have to be for just cause, and after such hearing as is provided for in section 30. The railroad might have the right to abrogate the entire contract, by giving thirty days' notice, but that is not pretended to have been done in this case.

Special plea number 2 by appellant averred that the contract sued on was for an indefinite period of time,

and was therefore terminable by either party, but for article 30 thereof, which provided that it could be terminated only for just cause established as existing by means and in the manner set forth therein. Appellant further averred that appellee had been discharged for just cause, the existence of which had been established in the manner set forth in the contract, and that the said contract was lawfully terminated by the discharge of the appellee. This plea was also demurred to as being insufficient in law to constitute a defense to the cause of action.

On June 2d, 1932 the appellant's train master, G. F. Dixon, gave the appellee the following note; "Please arrange to report at Train Master Williams office in Jackson tomorrow, June 3rd, at 2:40 P. M., with your records for train 104 of May 24th, as we want to question you about some apparent irregularities on that train on that date. (Signed) G. F. Dixon, Train Master." This note was received by the appellee, McGlohn, on the morning of June 3rd, 1932, when he reported for duty that morning on train No. 104. George W. Drennan, a fellow conductor, was on train 104 that morning, to whom appellee showed the notice, and it was arranged that Drennan should accompany appellee to the office of the train master in Jackson, to act as his representative at the hearing. This Drennan did, and also Webb Vinson, another fellow conductor, when the following was entered on the report, taken down by a stenographer, Mason: "Investigation held in train master's office, Jackson, Miss. 2:45 P. M., June 3rd, 1932, in connection with Conductor F. N. McGlohn rendering incorrect report 938 to Auditor of passenger receipts, covering handling of transportation on train 104, May 24, 1932, on which he was in charge. G. & S. I. R. R. represented by Mr. J. F. Walker, Superintendent, and Mr. G. F. Dixon, Train Master. Conductor McGlohn represented by Conductors Vinson and Drennan.

"Questioned by Superintendent Walker.

"Q. Mr. McGlohn, this is an investigation in connection with you rendering an incorrect report 938 to Auditor of Passenger Receipts, covering train 104, May 24, 1932. Do you want a representative? A. Yes, sir. Mr. Vinson and Mr. Drennan will represent me.

"Q. Were you the conductor on train 104, May 24, 1932? A. Yes, sir.

"Q. Have you a copy of your report, form 938? A. No, sir.

"Q. Weren't you instructed to bring it? A. Yes, sir. I don't keep a copy.

"Q. Is this an original of report you made to Auditor of Passenger Receipts? A. Yes, sir.

"Q. Mr. McGlohn, we have positive knowledge that a passenger boarded your train at Weatherby, Miss., on May 24, 1932, and rode to Jackson. A. Are you sure this is the date?

"Q. Yes, sir. A. There has not been but one revenue passenger to get on at Weathersby in a month. It was a lady going to Mendenhall. It may be that Walter Harris, who rides on a pass and it might not have been shown on the report.

"Q. Mr. McGlohn, there is no question and it is an undisputed fact that a passenger boarded your train at Weathersby on May 24th and came to Jackson. Your report, form 938, as rendered does not show same. This is your original report? A. Yes, sir.

"Q. Can you give us any further explanation as to why you failed to show this on your report to Auditor of Passenger Receipts? A. No, sir. Only revenue passenger I have picked up at Weathersby was a lady for Mendenhall.

"Q. Then you cannot give me any further explanation? A. No, sir.

"Q. Do either of you gentlemen representing Mr. McGlohn desire to ask me any questions? A. No, sir."

McGlohn testified that on the occasion of this incident at the train master's office he was not informed that

it was an investigation, nor was he given any other notice than that above stated as to what his report to the train master would be, or what proceedings would be had —that he understood they wanted to question him about some irregularities.

On the 4th of June, J. F. Walker, Superintendent, wrote McGlohn as follows: "Referring to the investigation which was held in Jackson, Mississippi, on June 3, 1932. It has been decided to dispense with your services. You will, therefore, arrange to turn in your transportation and all property of the railroad which is in your possession. J. F. Walker, Supt." This letter was delivered to the appellee on June 5th, by yard master Williams, at Gulfport, Mississippi, and on the same day he received a letter written to him by Train Master Dixon, as follows: "Please arrange to turn over to Mr. S. P. Wilson, Yard Master at Gulfport, all of the company property you have, including ticket punch, cash fare cutter, cash fare receipts, rule book, coach key, switch key, annual passes, hat checks and any stationery you might have. Mr. Wilson will advise me when done and I will then advise the district accountant to send you pay check for what we might owe you. Mr. Wilson has a letter from the superintendent to deliver to you."

In response to the foregoing the appellee turned over all of appellant's property which was in his possession, as well as his annual pass over the railroad. Thereafter, on June 8, 1932, appellee addressed the following letter to Superintendent Walker and Train Master Dixon, requesting an investigation under the provisions of article 30 of the contract sued on: "According to Article 30 in agreement between Order Ry. Condrs. & Ill. Cent. R. R. I would like to have an investigation as to nature and what I am taken out of service on June 3rd, as my letter dated June 2nd only says we want to question you about some apparent irregularity of Tr. #104 of May 24. Yours truly, F. N. McGlohn."

In reply to the foregoing letter appellee received two

letters from Superintendent Walker, one dated June 10th, 1932, and the other June 15th, which in that order are as follows: "Yours June 8th, asking for an investigation to cover your dismissal from the service, you referring to Article 30 of the Agreement. We have complied with Conductors' Agreement. Investigation was held in accordance therewith, and no further investigation is necessary." And again; "Yours June 8th, asking for investigation covering your dismissal from the service. Investigation has already been held in accordance with the Conductors' Schedule; however, if you want to talk to me about the case, and will come to McComb, I shall be glad to discuss it with you."

On June 16th, 1932, Mr. Vinson wrote to Superintendent Walker as follows: "Referring to your letter of June 10th, 1932, to Mr. F. N. McGlohn, stating: 'We have complied with Conductors Agreement. Investigation has been held in accordance therewith and no further investigation is necessary.' The Conductors Committee takes the position that the provisions of Article 30 of the agreement have not been complied with. Mr McGlohn has not received an investigation. Please arrange to give Mr. McGlohn an investigation at earliest convenient date, as per Article 30 of Agreement, advising me time and place, so as he can arrange to be present. Thank you for an early reply as to your further decision and action in this matter."

There was no testimony on the hearing in the train master's office further than that stated. The appellee and his witness testified on the trial that he was not informed that it was an investigation, and that no evidence was presented; and that the report, when made up, was not presented to him for approval and signature, and that he did not sign and approve the statement made by Mason, the stenographer; and that he was never given a hearing under the rules, although he had requested both personally and through fellow conductors.

On the trial in the lower court, the appellee, McGlohn,

testified that he did not see any person get on the train at Weathersby on the day in question, and that he did not collect any fare from a passenger; that when he went to the engine to report some matter, as they approached Mendenhall, between Jackson and Weathersby, one of the employees, the fireman, asked him if he got the cash fare which he ran up from the blind to him at Weathersby— that he told him he didn't see anyone, that he saw someone going around the depot at Mendenhall, and he supposed this negro was the party referred to, and that he couldn't do anything about it. The fireman testified substantially to the same effect. It appeared from the testimony of the appellant that on this date one of the employees of the appellant secured a negro to board the train at Weathersby for the purpose of checking the conductor as to the cash fare, giving the negro the necessary money for his fare to Jackson; that he saw the negro get on the train, but did not see him get off, although he watched the train until it pulled out and was moving too fast for the negro to get off; that another employee at Jackson testified to seeing the negro get off there on the same day. The negro alleged to have been used in this way was not introduced as a witness, and there was no testimony that McGlohn collected any fare, or that he actually saw the negro on the train; neither was the negro nor any testimony on his part mentioned on the hearing at the office of the train master on June 3rd; nor was the appellee, McGlohn, told who the passenger was that boarded the train at Weathersby on the date in question.

Special plea No. 3 averred that the contract sued on was unilateral and unenforcible, etc., to which the demurrer was sustained. Special plea No. 4 averred that the contract sued on was not a contract of hiring, but merely a schedule of wages, rules, regulations and conditions governing the conduct of conductors while in the employment of the railroad company, and had nothing to do with the hiring of employees, or the tenure of

service. The demurrer to this special plea was sustained.

Special pleas 5 and 6 were set up in bar of claim for damages for loss of alleged pension rights, and demurrers to these pleas were sustained; but the court on the hearing did not permit a recovery for the loss of pension rights, for the reasons set forth hereafter.

Special plea No. 7 averred that inasmuch as the appellee had invoked the aid of the rules and regulations of the appellant's pension system, and sought relief thereunder, he was bound by all the rules and regulations, including section 21 thereof. And the demurrer to this was sustained. But this becomes immaterial, because there was no recovery for pension rights.

Special plea No. 8 averred that on November 17th, 1934, appellee, not then being in the service of the appellant, was sentenced to two years in the penitentiary for violation of the Harrison Narcotic Act, which sentence he served. His contract, if any, as an employee of the appellant was breach by him at that time. This plea was demurred to, and the demurrer overruled.

It was agreed in the trial of the case that the appellee, McGlohn, was on November 17th, 1934, sentenced to serve a term in the federal penitentiary under the Harrison Narcotic Act, 26 U. S. C. A. sections 1040-1054, 1383-1391, to which charge he pleaded guilty, and served a term, a portion of which was abated for good behavior.

The court denied recovery by the appellee, McGlohn, for any amount under the alleged contract accruing subsequent to the sentence imposed November 17th, 1934, and denied the pension rights, and submitted the matters in dispute to the jury, who returned a verdict for $3,000.

The proof showed that the appellee was at the time of his discharge receiving $228 a month. McGlohn testified that he sought employment in every way he could from the date of his discharge, and was unable to ob-

tain it; that he had saved $500, which he used in trying to operate a fish stand, but lost his money in such operation. The recovery was less than the salary would have amounted to during the period from June 4th, 1932, to November 17th, 1934.

We are of the opinion that the proceeding alleged to be a hearing in the train master's office, relied on to constitute compliance with the investigation provided for in the case of discharge of conductors, did not conform to the requirements, nor with the rules provided for in said section; and that inasmuch as investigation was refused, and the rule was not complied with, and the record verified by both parties, as provided in the rule, there was no adequate way in which McGlohn could appeal to the higher officers of the company, under the said rules, and consequently his right was not lost for failure to prosecute such an appeal. It was material to the securing of justice that McGlohn should have been given the information in the hearing before the company officials, presenting all evidence which was relied on in that hearing, that he might be able to cross-examine the witnesses, or produce counter proof, or meet the charge with definite information.

Rule 30 of the contract, provided for such hearing, is calculated, if followed, to establish truth and justice. It tends to secure fair dealing between the employees, such as conductors, and the officers of the company having control of their employment and discharge, and would tend to secure satisfactory relations among the conductors, and advantage to the railroad of having experienced servants in its employment, which was pointed out in the former appeal of McGlohn v. G. & S. I. R. Co., 179 Miss. 396, 174 So. 250, which decision established the validity of the agreement, and pointed out reasons why it was beneficial to both parties.

Under the contract McGlohn was entitled to recover up to the time that he was adjudged guilty of a felony and sentenced to the penitentiary, which acts termi-

nated the contract because of the inability of McGlohn to further discharge the contract. The commission of crime cannot legally be accounted to discharge. The law does not recognize poverty as an excuse for the commission of felonies, and we are of the opinion that McGlohn's conviction terminated his contract at that time, and cut off his right to a pension thereafter, because he could not longer continue in the service of the company, had the latter seen proper to reinstate him.

The judgment of the court below is affirmed.

Affirmed.