## 18194.  GARY v. CENTRAL OF GEORGIA RAILWAY CO.

1. Where a contract of employment stipulated that the employee would not be dismissed from the service without a fair and impartial trial had in a manner and before persons stated, after notice of the charges for investigation and opportunity to have certain representatives to discuss the points at issue, the employer would have no right to discharge the employee until he had been afforded the trial thus provided for, involving the issue as to the employer's right to discharge him upon some particular ground. In the meantime, if the relation has not been otherwise terminated, his dismissal by his employer would constitute a breach of the contract, for which he could sue immediately for any special injury resulting therefrom.

2. Where the contract further provided that within a certain time after such trial the employee might appeal, if dissatisfied with the result thereof, but contained no provision as to supersedeas if a trial were actually had in accordance with the agreement and concluded adversely to the employee, the employer's right then to discharge the employee would not be in abeyance pending the disposition of an appeal nor during the period for the entry of the same.

3. In this suit by an engineman, as employee, against a railroad company as employer, for a breach of the contract of employment by discharging him contrary to the terms of the agreement, the damages claimed because of the plaintiff's loss of his right of seniority and because of his having been blacklisted or boycotted by other railroad companies were too remote and speculative to constitute proper elements of recovery.

4. Nor was the plaintiff entitled to be compensated for the alleged loss of his right in a certain group policy of insurance which appeared to have been issued subsequently to the making of the contract of employment and which was in no wise provided for nor referred to therein.

5. Where an employee is wrongfully discharged before the end of his term and elects to sue for a breach of the contract, he may do so immediately and claim any special injury which he may have sustained in consequence of such breach. In such a case the measure of damage is the actual loss from the breach of the contract in view of the salary or wages which he was earning, and in estimating the amount all facts down to the time of the trial may be considered. The petition, as against a general demurrer, contained a sufficient allegation of damages under this principle. The court erred in dismissing the petition on general demurrer and in sustaining one ground of the special demurrer, but correctly sustained all other grounds of the special demurrer.

DECIDED FEBRUARY 20, 1928.

Action for damages; from Richmond superior court—Judge A. L. Franklin. April 25, 1927.

J. M. Gary brought an action against Central of Georgia Railway Company for damages for an alleged breach of a contract of

Master and Servant, 39 C. J. p. 91, n. 10; p. 109, n. 41; p. 112, n. 69 New; p. 115, n. 5.

employment. The court sustained general and special demurrers to the petition, and the plaintiff excepted. The petition alleged, among others, the following facts: From October, 1909, until August 8, 1924, the plaintiff was employed by the defendant, first as a fireman and then as a locomotive engineer, on a line of the defendant's railroad. The plaintiff entered the defendant's service under a contract made with the plaintiff through the Brotherhood of Locomotive Engineers, of which the plaintiff was a member and continued to be a member in good standing. The contract was of force at the time of the plaintiff's alleged wrongful discharge, and embodied article 31 of the rules of the brotherhood, which provided as follows: "(a) No engineman shall be demerited, suspended, or discharged from the service of the company without a fair and impartial trial, investigation to take place before the Train Master and Master Mechanic, or their representatives. He will be notified of charges for investigation and be allowed to be present and hear evidence. If he desires he may have two enginemen with him, and, after evidence is taken, such representatives will have the right to discuss the points in the case with the officials. If exonerated, he will be paid for the lost time. In case of discipline, he will be notified in writing within ten days after the investigation. Unless complied with, there will be no entries made. Enginemen will not be held off runs for minor violations, provided investigation can be held within ten days. Enginemen will be notified promptly by letter or otherwise when they have committed a violation of rules.

"(b) Discipline will be applied within thirty days after date of notice. No complaints or appeal will be entertained unless presented in writing to the Superintendent within 30 days after its occurrence. Enginemen shall have the right to appeal, provided such appeal is made in writing within 30 days after the Superintendent has rendered his decision.

"(c) Upon request the engineman who has been disciplined will be furnished a copy of his own statement pertaining to such investigation.

"(d) Except in cases of extreme emergency, enginemen will not be called to attend investigations immediately after having been on duty for a period or trip until they have had the amount of rest required by the sixteen-hour law.

"(e)   Division officers will furnish General Chairmen with copy of investigation where discipline is applied when requested."

On August 8, 1924, the plaintiff received the following letter dismissing him from the defendant's service:

"Savannah, Ga., August 8th, 1924.

"Mr. J. M. Gary, engineer, Augusta, Ga.

"Dear Sir:   Referring to the investigation held at Augusta at 4:30 p. m., August 6th.   Your record was charged with ten demerits for delaying train No. 47 at Millen and for refusing to give the operator at Millen and the dispatchers necessary information for the proper handling of your train, and for blocking second No. 37 at Millen unnecessarily.   These ten demerits added against your record gives you ninety (90) demerits, which automatically relieves you permanently from the service.   Send to this office your rule-book and your switch-key, and any other property that you may have belonging to the company.   You may retain your annual pass for the purpose of coming to Savannah to check up your time, in order that you may be paid the balance due you by the company.   On your arrival at Savannah please turn in your annual pass to this office, and a trip pass will be given you to return to Augusta.   I am sending this letter to you in care of General Yardmaster Ellis.

"Yours truly,

"W. H. Wright, Superintendent."

The petition further alleged:   The act of the defendant in thus dismissing the plaintiff was premature and illegal, because, under the terms of the contract, the plaintiff was allowed 30 days within which to appeal from the result of the investigation or trial of August 6, and, having entered such appeal, he could not be rightfully discharged until it was disposed of.   It is apparent from the letter of August 8 that the plaintiff was discharged merely because of an accumulation of demerits. Plaintiff did not have the number of demerits mentioned, but, in any event, the defendant could not discharge him upon such ground, because the contract provided no "automatic" scale of demerits for which the plaintiff could be dismissed without a fair and impartial trial as provided in the contract.   The petition further sets forth what the plaintiff claims to be the truth in reference to the various demerits charged against him, the purpose being to show that they were unjustified and

illegal, and therefore constituted no reason for his discharge, even if, under the terms of the contract, an accumulation of 90 demerits would of itself afford ground therefor. The plaintiff was never given a trial or investigation, as provided in Article 31, on the question of whether he should be discharged, and his dismissal from the defendant's service was therefore wrongful and amounted to a breach of the contract.

The plaintiff claimed damages in several distinct items, as follows: (1) $15,000 for the loss of his right of seniority as an engineer. (2) $3,300 per year during the plaintiff's life expectancy of 24½ years, as a result of his having been blacklisted and boycotted by other railroads, and of his having been thus deprived of the earnings which he would otherwise have made as an engineer at a salary of at least $275 per month, the amount he was receiving from the defendant at the time of his discharge. (3) $6,000 as the value of a group policy of insurance covering the plaintiff's life and disability, which policy was issued in virtue of the plaintiff's employment and to which he was a party. This policy appears to have been issued some time after the making of the contract of employment and is in no wise referred to therein. (4) $6,260 as the amount the plaintiff would have earned from the date of his discharge to the filing of the present suit, at the salary of $275 per month, which he was receiving under the terms of his employment.

In the rules of the brotherhood, which were included in the contract between the parties, and a copy of which was attached to the petition, was the following statement, found in Article 29: "(f) Letters from the management in regard to compensation and working conditions will remain in effect."

The several grounds of the defendant's demurrers, so far as specific reference to them may be necessary, will be stated in the opinion.

*W. D. Lanier, W. K. Miller,* for plaintiff.

*W. Inman Curry,* for defendant.

BELL, J. (After stating the foregoing facts.) 1. If the contract of employment had contained no provision as to when or how it might be terminated, the defendant might have discharged the plaintiff at will; but since, under specific stipulations, the relation could be severed only in a particular way or on the happening

of a certain event, the act of the defendant in dismissing the plaintiff without a compliance with these conditions would constitute a breach of the contract. According to the terms of the agreement, the plaintiff could not be demerited, suspended, or discharged from the service of the company without a fair and impartial trial, had in a manner and before persons stated, after notice of the charges for investigation and opportunity to have two enginemen as his representatives to discuss the points at issue. The plaintiff, in his petition, denies that these conditions were complied with. We think that the letter of August 8, 1924, discloses that the trial of August 6, 1924, was in reference only to demerits, and it is our opinion that the defendant could not rightfully dismiss the plaintiff from its service where the only issue for investigation related to such a matter. The clear intent and purpose of the agreement was that the plaint..f could only be dismissed after a hearing which involved the question of the right of the defendant to dismiss him upon some ground. The contract contains no provision authorizing the dismissal of the plaintiff merely for an accumulation of demerits, in the absence of a trial upon that question. In the case of Crotty *v.* Erie R. Co., 149 App. Div. 262 (133 N. Y. Supp. 696), which was an action for a breach of a contract of employment, the petition contained the following allegation: "That in and by the terms of said employment it was provided that plaintiff, as such yardman, would not be suspended (except suspension pending investigation), discharged, or have record entered against him without a hearing and full investigation, which would be given promptly; that he might have present during such investigation any actual witnesses of the occurrence under investigation, except discharged employees, and when found blameless, would receive full pay for the time lost." The court, in discussing the case in the light of this averment, said: "In effect, therefore, the contract provided that the term of plaintiff's hiring should continue until he had been given a hearing and full investigation, with the right to call witnesses of the occurrence under investigation. While the subject of the hearing and investigation is not expressly stated, it must relate to some ' occurrence.' As the only ' occurrence ' which could properly be the subject of an investigation respecting his continuance in service must be some alleged dereliction in duty, we think that the contract fairly im-

plies that it shall continue until such dereliction is established.

"This view is confirmed by the provisions of the contract to the effect that, if found 'blameless' after suspension, he shall receive full pay for the time lost. He can be found culpable or blameless only with reference to his own conduct. The complaint alleges that plaintiff was not given a hearing or full investigation, and that he was not afforded the opportunity to present any witnesses in his behalf. The contract was not, therefore, legally terminated by defendant. It is true that the decision of the master after such hearing as to the sufficiency of the charge may be final and conclusive, in the absence of such bad faith as would constitute fraud; but, when the parties have thus agreed, the servant has a right to insist upon a full investigation, relying upon the fairness and justice of the master." So we think in the present case that in the absence of a new agreement between the parties, or possibly an abandonment by the plaintiff, the contract would continue of force until terminated in the manner prescribed by its terms. The statement in the rules of the brotherhood, that letters from the management in regard to compensation and working conditions shall remain in effect, does not purport upon its face to provide a method for terminating the contract different from that prescribed in Article 31. "Working conditions" hardly implies conditions and terms of the contract of employment. It was therefore not necessary for the plaintiff to allege what were the contents of the letters from the management, or that he was dismissed in a manner contrary to the terms thereof. If any right to discharge the plaintiff on other conditions than as stated in Article 31 was reserved in these letters, this would be a matter to be pleaded by the defendant. As will be shown later, the petition contained sufficient allegations as to one recoverable item of damages, and we think it was good as against a general demurrer.

2. The court did not err in sustaining ground 1 of the special demurrer attacking the allegation in paragraph 9 of the petition, that the plaintiff was discharged prematurely because of his alleged right to remain in the defendant's service pending his appeal. The contract contained no provision as to supersedeas, and if the plaintiff had been given the trial as required by Article 31, and if the trial had resulted adversely to him, the defendant's right then to discharge him would not have been in abeyance pending

an appeal, nor during the period provided for such appeal. No decision in this case is necessary, and none is made, as to whether the defendant could have discharged the plaintiff after such trial, regardless of whether the result thereof was favorable or unfavorable to the plaintiff.

3.   The damages which the plaintiff claimed because of the loss of his right of seniority, as it is set forth in this case, and because of his having been blacklisted and boycotted by other railroads, were too remote and speculative to constitute proper elements of recovery. "Remote or consequential damages are not allowed whenever they can not be traced solely to the breach of the contract, or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." Civil Code (1910), § 4394. See also Berlin *v.* Cusachs, 114 La. 744 (38 So. 539) ; Inglesli *v.* Hickson Inc., 195 App. Div. 585 (2) (186 N. Y. S. 846) ; Mastoias *v.* Chic. &c. Ry. Co., 217 Fed. 153; Westwater *v.* Rector of Grace Church, 140 Cal. 339 (73 Pac. 1055). Accordingly, the court properly sustained grounds 3 and 4 of the special demurrer, challenging the plaintiff's right to recover such damages.

4.   Nor was the plaintiff entitled to be compensated for the alleged loss of his right in the group policy of insurance, assuming that the value of such right was sufficiently shown. This policy appears to have been issued subsequently to the making of the contract of employment, and is in no way referred to therein. "Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach, and such as the parties contemplated, when the contract was made, as the probable result of its breach." Civil Code (1910), § 4395. The court therefore properly sustained ground 5 of the special demurrer.

5.   If the defendant's dismissal of the plaintiff from its service constituted a breach of the contract, as was shown by the petition, he had the right to sue immediately for any special injury arising from its breach, and in such a case the measure of recovery is, prima facie, full pay at the contract rate; and in estimating the amount all facts down to the time of the trial may be considered. The averment that the plaintiff was deprived of his earnings from

the date of his discharge on August 8, 1924, to the time of the suit, aggregating $6,260, and was thus damaged in this sum, was good as against general demurrer. The defendant did not demur specially to this claim. See Civil Code (1910), § 3588; *Ansley* v. *Jordan,* 61 *Ga.* 482; *Roberts* v. *Crowley,* 81 *Ga.* 429 (3) (7 S. E. 740); *Realty Co.* v. *Ellis,* 4 *Ga. App.* 402 (4) (61 S. E. 832); *Ga., Fla. & Ala. Ry. Co.* v. *Parsons,* 12 *Ga. App.* 180 (2) (76 S. E. 1063); *Walker* v. *Jenkins,* 32 *Ga. App.* 238 (123 S. E. 161), and cit.

We conclude that the court erred in sustaining the general demurrer, and also ground 2 of the special demurrer, which was a mere amplification of the general demurrer. In all other points the judgment complained of was correct.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*