**ILLINOIS CENT. R. CO. v. MOORE.**
**MOORE v. ILLINOIS CENT. R. CO.**
No. 9168.

Circuit Court of Appeals, Fifth Circuit.
June 20, 1940.
Rehearing Denied Aug. 8, 1940.

HOLMES, Circuit Judge, dissenting.

James L. Byrd, of Jackson, Miss., for appellant and cross-appellee.

C. B. Snow, of Jackson, Miss., for appellee and cross-appellant.

Before SIBLEY, HOLMES, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

Prior to June, 1926, the appellee Earl Moore was working as a switchman for the Alabama & Vicksburg Railway Company at its yards in Jackson, Miss. He was a member of the Switchmen's Union of North America which had an agreement with that railway company as to rates of pay, hours of service and working conditions. In June, 1926, the appellant, Illinois Central Railroad Company, through the Yazoo & Mississippi Valley R. R. Co., took over the operation of the Alabama & Vicksburg Railway Company, expressly assuming performance of said union contract. A consolidation of switching yards at Jackson led in November, 1926, to the making of a new seniority roster of switchmen in the consolidated yards. Moore's number was moved from 37 to 52. He worked in the yard under this number for some time, being in consequence sometimes idle, and then brought a suit in October, 1932, for damages because of the partial unemployment, asserting that his employment was with reference to his old Switchmen's Union contract. He lost his case in the Supreme Court of Mississippi on March 16, 1936, that court saying: "The effect of the promulgation of this November, 1926, seniority roster was to offer the appellant and the other switchmen affected thereby a new contract in so far as their relative seniority was concerned, and, where the breach of a contract is followed by the offer of another as a substitute therefor, the acceptance thereof waives the breach of the former. By accepting work under the new roster without protest, the Illinois Central was justified in believing that the appellant would claim only thereunder, and that it could safely deal with its other switchmen on that assumption and accord to them their rights thereunder." Moore v. Yazoo & Miss. Valley R. R. Co., 176 Miss. 65, 166 So. 395, 397.

Meanwhile, on February 15, 1933, Moore, having been absent from work for a year on sick leave, reported for work and was discharged as "an unsatisfactory employe." On his request he was given a hearing before the Superintendent, in which his slowness and irregularity of working, and his having sued the Company were brought up. The latter was found in the trial of this case to have been the real cause of the discharge. Moore appealed to the General Manager, but did not attend at the time and place set for hearing.

On Sept. 25, 1936, Moore sued the Illinois Central Railroad Company in a court of Mississippi for damages for his discharge, alleging that at the time of his discharge he was a member of the Brotherhood of Railroad Trainmen which since 1924 had an agreement in force with that Company touching rates of pay and other things, including seniority, material portions of which were exhibited, along with the seniority roster of November, 1926, above mentioned, on which he was number 52. He alleged that he "was entitled to work under said contract of employment whenever work was available for 52 men in the Jackson yards and said contract provides, among other things, that no person should be fired or discharged without just cause"; and that he was discharged arbitrarily and without just cause. Six special pleas were filed and held good on demurrer, but on appeal to the Supreme Court of Mississippi the judgment was reversed and the cause remanded for further proceedings. Moore v. Illinois Cent. R. R. Co., 180 Miss. 276, 176 So. 593. Moore then amended to claim damages in excess of $3,000, and the cause was removed to the district court of the United States. By that court's permission the six pleas were withdrawn and a so-called plea in abatement filed. It set up that the Illinois Central Railroad Company is a common carrier in interstate commerce whose railroad extends from Chicago in Illinois to New Orleans in Louisiana, passing through Mississippi and other States; and that it and Moore as its switchman were subject to the Acts of Congress, especially that of May 20, 1926, amended June 21, 1934, 45 U.S.C.A. § 151 and ff; that the Union

contract relied on exists under said laws, and said contract and laws require adjustment of disputes thereunder by the Company's higher officers, and then by the Adjustment Board, which remedies have not been pursued, because of which the suit should be abated. This plea was stricken on demurrer. Six pleas substantially like those withdrawn were then filed, and a seventh setting up that the Union Contract was by its terms terminable on thirty days' notice in writing and that Moore's written notice of discharge was in any view effective after thirty days. These pleas and an answer were disposed of adversely by demurrer, or by trial before the court without a jury, and judgment was entered for $4,183.20. This appeal results, with a cross-appeal which claims larger damages.

The district judge in all his important rulings of law considered himself bound by the decisions of the Supreme Court of Mississippi in this and other cases, under the authority of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

We are impressed with the seriousness of the question as to what law determines the validity and meaning of railroad union contracts, and the remedies applicable to them; and of the practical consequences of the holding that for so long a period as six years a discharged employee may sit quiet without the pursuit of the special remedies in the contract or under the Acts of Congress, and then by suit recover back pay for that time, when perhaps proof may have become difficult touching the merits of his discharge.

■ We are of opinion that the doctrine of Erie v. Tompkins, supra, applies only to local matters governed wholly by State law. A railroad union contract applying over a railroad system which operates in many States is not such. Its meaning and effect ought to be the same in each State. The present contract was signed by a representative of the Union residing in Chicago and by the General Manager of the railroad whose headquarters are in Chicago. Nothing appears to localize it in Mississippi. Its subject matter, the relationship of an interstate railroad with its employees, is well within the commerce power of Congress and has for fifty years been a subject of federal legislation.[1]

The very matter of collective agreements was taken over and extensively regulated and remedies for disputes provided by the Railway Labor Act of 1926, amended in 1934. Section 2 of the Act, 45 U.S.C.A. § 151a, names as one of its purposes: "(5) to provide for the *prompt* and orderly settlement of *all disputes* growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." In stating the duties of carriers and employees, 45 U.S.C.A. § 152(1), it requires them to exert effort "to make and maintain such agreements", and that "all disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer * * *." Section 152(2). Three lengthy paragraphs relating to the choice of representatives, the making of collective bargains, the deduction of union dues, and to agreements not to join a union, are expressly written into every contract of employment. 45 U.S.C.A. § 152(3) (4) (5) (8). Subparagraph (7) prohibits changes in the rates of pay, rules or working conditions of employees as a class, as embodied in the agreement, except as provided by the agreement or the statute. Section 3, 45 U.S.C.A. § 153, provides jurisdiction in the Railroad Adjustment Board for all manner of disputes, the First Division being expressly given jurisdiction over those involving yard-service employees. Subsection (i) makes it plain that not only disputes raised by the Union but also those of a single employee are included, saying: "The disputes between *an employee* or group of employees and a carrier * * * growing out of grievances or out of the interpretation or application

[1] Contracts of railroad employment were regulated by the Act of June 1, 1898, 30 Stat. 424, but the Act was held unconstitutional, Adair v. United States, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436, 13 Ann.Cas. 764. It was repealed and substituted by the Act of July 15, 1913, 45 U.S.C.A. §§ 101–125. "Controversies concerning wages, hours of labor or conditions of employment" were dealt with; and agreements were to be sought by mediation and arbitration. Hearing by representatives of employees was provided in federal receiverships. Sect. 9, 45 U.S.C.A. § 122. Hours of labor were regulated in 1907. 45 U.S.C.A. § 62. The Act of Feb. 28, 1920, 45 U.S.C.A. §§ 131–146, again dealt with such controversies and encouraged the making of agreements thereabout.

of agreements concerning rates of pay, rules, or working conditions, including cases pending and unadjusted on June 21, 1934, *shall be handled* in the usual manner up to and including the *chief operating officer* of the carrier", and then *may be* referred to the Adjustment Board. Awards are final except as to *a money award;* Subsection (m) (*o*). Awards, including money awards, are enforcible in the district court: Subsection (p). This legislation was explained and vindicated as respects the forming of collective agreements in Texas & New Orleans R. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, and Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789.

■ A collective agreement between the employees of an interstate carrier by rail and their employer is therefore not a local matter as to whose nature and application the decisions of a State Supreme Court are binding on the federal courts. On the contrary, because of the subject matter, and of the federal legislation touching it, a federal court is bound to exercise an independent judgment, and the Supreme Court of the United States has final authority. The decisions of the Supreme Court of Mississippi are entitled to the same respectful consideration as are those of the courts of other States, but no more.

■ The decision of the Mississippi court in this very controversy is not conclusive of it. As in the case of Wichita Royalty Co. v. City National Bank, 306 U.S. 103, 59 S.Ct. 420, 83 L.Ed. 515, the decision was one of reversal, and not a final adjudication; and the Mississippi court does not regard itself as bound upon a second appeal, if satisfied it decided the law wrongly on the first. Brewer v. Browning, 115 Miss. 358, 76 So. 267, 519, L.R.A.1918F, 1185, Ann.Cas. 1918B, 1013. Since the removal of the case to the federal court this court stands in the place of the Supreme Court of Mississippi and with the same power of reconsideration. If the matter were only one of Mississippi law we might well abide that court's latest expression, but because it involves the interpretation and application of a collective contract of railroad employees we should re-examine the law.

■ We are unable to agree that a single employee suing on his contract of employment to enforce his individual right to recover pay or for damages for discharge sues directly upon the collective agreement as a complete contract made for his benefit. See Yazoo &᾽ Miss. Valley Ry. Co. v. Sideboard, 161 Miss. 4, 133 So. 669. The federal statutes above referred to speak of the collective agreement as "an agreement concerning rates of pay, rules, and working conditions", (45 U.S.C.A. § 152(1) (6), and often), but the individual's contract is referred to as "the contract of employment between the carrier and each employee." (45 U.S.C.A. § 152(8) ). The collective agreement may contain a contract between the union and the carrier, as for an open ·or closed shop, collection of union dues,[2] and the like, but it is not itself a contract of employment. It binds no one to serve the carrier and binds the carrier to hire no particular person. It is only a basis agreed upon as mutually satisfactory for making contracts of employment. The contracts of employment arise when individual men present themselves, are examined touching their knowledge of the railroad rules and other things, and stand the required physical examinations, and are severally accepted as employees. Or they arise tacitly when old employees, after the publication of the collective agreement, continue to work. In the absence of any special agreement otherwise, every employment may be presumed to be on the basis of the collective agreement and to adopt its terms. But ordinarily there is nothing to prevent a special agreement if an employee desires it. The collective agreement before us ᾽concludes: "Nothing in these rules shall be construed to abrogate any local rights the men may now have", showing that its application might vary. When the collective agreement, tacitly or expressly, is taken as supplying any or all of the terms of the service of a particular employee, it still is not the contract, but only a standard to which the parties have referred in making their parol contract. Such is the view deliberately adopted by this court in a case where a single employee was asserting a right to the pay fixed in the collective agreement, where we held the employee, though not a member of the Union which made the agreement, was employed under its terms᾽ Yazoo & Miss. Val. Ry. Co. v. Webb, 5 Cir., 64 F.2d 902. A similar view is maintained both in Kentucky and in Tennessee, where the contract before us also operates. Hudson v. ᾽ Cincinnati, etc., Ry. Co., 152 Ky. 711, 154

---

[2] At present the federal law prohibits such a contract in railroad collective agreements.

S.W. 47, 45 L.R.A.,N.S., 184, Ann.Cas. 1915B, 98; Cross Mountain Coal Co. v. Ault, 157 Tenn. 461, 9 S.W.2d 692. A recent well considered case in which all the authorities are reviewed is Rentschler v. Missouri Pac. R. R. Co., 126 Neb. 493, 253 N.W. 694, 95 A.L.R. 1. In it the Webb case was cited with approval and its holdings adopted. See also Gary v. Central of Georgia Ry., 37 Ga.App. 744, 141 S.E. 819; Id., 44 Ga.App. 120, 123, 160 S.E. 716. The collective agreement as such is made, defended and changed by the union, but the rights of each employee employed under it are his own, and he may waive or assert them himself as he sees fit. Piercy v. Louisville & N. R. R. Co., 198 Ky. 477, 248 S.W. 1042, 33 A.L.R. 322.[3]

[redacted] It follows clearly that when an individual employee sues for damages for a breach of his contract of employment because of a discharge contrary to the collective agreement as Moore does; or because he was not paid the wages fixed in the collective agreement, as Webb did (Yazoo & Miss. Valley R. R. Co. v. Webb, supra), he is not suing on the written collective agreement, but upon his parol contract of hiring, which adopted those terms of the collective agreement which are applicable to him. Moore's contract of employment in 1933 would not be established by merely proving this written collective agreement made in 1924 by a union to which he did not belong and with a railroad for which he did not work. He was then working for another railroad, which had another collective agreement under which he continued to claim rights until the adverse decision in March, 1936. To establish the contract of employment which he now claims, Moore must show that he became an employee of the Illinois Central Railroad Company under circumstances which made the terms of the Brotherhood's collective agreement applicable to him. Perhaps he would have to show his acceptance of the Brotherhood's seniority roster of November, 1926, since it was that act which ended his employment with reference to the contract between the Switchmen's Union and the Alabama & Vicksburg Ry. Co., as held by the Supreme Court of Mississippi. Moore v. Yazoo & Miss. Valley Ry. Co., 176 Miss. 65, 166 So. 395.

[redacted] His contract of employment standing thus, and no federal statute providing any limitation, we think the pleaded State statute of three years may apply: "Actions on an open account or stated account not acknowledged in writing, and signed by the debtor, and *on any unwritten contract, express or implied,* shall be commenced within three years next after the cause of such action accrued, and not after." Mississippi Code, § 2299. It is well settled that a contract is unwritten if the contract itself cannot be proven wholly by writings. 37 C.J., Limitations, § 86. "If there is any break in the chain of the writings and such break has to be supplied by parol testimony, then the three years' statute applies and not the six years'. * * * Any break in the writing or writings which is material and provable only by parol brings the three years' statute into operation." City of Hattiesburg v. Cobb Bros. Const. Co., 174 Miss. 20, 163 So. 676, 678. It is not apparent from the petition that Moore's contract of employment is wholly provable in writing, and the plea of the three year statute should not have been stricken on demurrer.

[redacted] In the event writings do exist which bring the case within the six year statute of limitation, Code Miss.1930, § 2292, the other defenses will become material. We consider them briefly. The plea that suit may not be filed without recourse to the Adjustment Board is without merit. The Adjustment Board may settle the disputes of the individual employee as well as those of the group, 45 U.S.C.A. § 153(i): as may the Mediation Board, 45 U.S.C.A. § 155(1). The first cited section says that a dispute "shall be handled in the usual manner up to and including the chief operating officer of the carrier," and then it "may be referred" to the Adjustment Board. The permission to go to the Adjustment Board does not exclude direct recourse to the courts.

[redacted] The provision in the collective agreement for a hearing before the carrier's officers, with appeal to the highest, is

[3] On an appeal from Canada the English Privy Council held the collective agreement to be no contract between the individual and his employer, and to be enforceable only by the union and by means of a strike, the individual having no right of action on it. Young v. Canadian Northern Ry., 38 Manitoba L.R. 485, 567. This decision was followed in Kessell v. Great Northern Ry. Co., D.C., 51 F.2d 304. See also Bancroft v. Canadian Pac. R. R. Co., 30 Manitoba L. R. 401.

966

in line with the requirements of the statute, but neither it nor the statute intends to make the employer's adverse decision binding on the employee. The requirement that relief be sought up through the highest operating officer seems to be a prerequisite to an appeal to the Adjustment Board, but not to a suit in court.

The conductors' collective agreement in McGlohn v. Gulf & S. I. R. Co., 179 Miss. 396, 174 So. 250, 251, expressly specified that conductors would "not be demerited, disciplined or discharged without just cause", and provided for notice and trial before discharge. The agreement before us provides only that yardmen taken out of service for cause shall be notified of the reason and given a hearing within five days if demanded, with right of appeal. "In case the suspension or dismissal or censure is found to be unjust, yardmen or switchtenders shall be reinstated and paid for all time lost." It is argued with force that since the employment is for no definite time, and the employee may quit at any time, the employer may discharge him at any time; and that to cut off the right to discharge at will a clear stipulation is required, like that in the McGlohn case. The contract before us contains only a stipulation that the cause of discharge shall be stated and a hearing given on demand, and if "found to be unjust, yardmen and switchtenders shall be reinstated and paid for all time lost." We find in these provisions a clear implication that discharge is not to be at the employer's will, but only for a just cause, and it would be unreasonable, without express provision to that effect, to hold that the railroad officers are the sole or the final judges of the justice of the cause. Nor is appeal to the highest operating officer for reinstatement made a prerequisite to an appeal to the court for damages. Surely a court, enlightened by witnesses, may judge of the justice of a cause of discharge. In case of an arbitrary discharge the union might take the matter to the management, the Adjustment Board, or even to the test of a strike. The individual also on his individual contract of employment may seek reinstatement with pay through the railroad's officers, or through the Adjustment Board; or he may, before or after pursuing those remedies, acquiesce in the discharge and ask damages for a breach of contract in a court of law.

The filing by an employee, on advice of counsel, of a suit to establish his seniority status is not by itself a just cause to discharge him. The seniority provision of a collective agreement is an important and valuable part of the individual contracts of employment made thereunder. It has been held the union cannot waive or destroy it. Piercy v. Louisville & N. R. R. Co., 198 Ky. 477, 248 S.W. 1042, 33 A.L.R. 322. If the employee's seniority is not satisfactorily settled otherwise, we see no reason why an appeal to a court to establish his right, if decently conducted, should forfeit his employment. If the railroad wishes to retain no one who sues it, a stipulation to that effect ought to be added to the provisions about unjust discharge. The rule about discharging those who sue claimed to exist on the Illinois Central is shown to be only a policy, and not known to Moore. It does not warrant a court in saying that Moore's seniority suit was a just cause for discharge. Whether it was the true cause, or whether another sufficient cause was acted on, we leave open for retrial.

The provision of the collective agreement that "These rules and rates shall remain in effect until Dec. 31, 1925, and thereafter until revised or abrogated, of which intention thirty days written notice shall be given", refers to the collective agreement as a whole, and the notice contemplated is one between the railroad and the union. It does not mean that by a written notice to an employee his contract can be ended without just cause after thirty days. We so held in Yazoo & Miss. Valley R. R. Co. v. Webb, 5 Cir., 64 F.2d 902. The plea that the discharge thus became operative after thirty days was properly stricken.

The judgment against Moore in his seniority suit is not res judicata in this suit. The effect of a State court's judgment as res judicata has always been held a question of State law; and the holding of the Supreme Court of Mississippi in this case, 180 Miss. 276, 176 So. 593, is on that point conclusive. This suit is upon a contract of employment with the Illinois Central Railroad Company, which embraces terms of the Brotherhood's agreement. That suit was upon a contract of employment with the Alabama & Vicksburg Ry. Co., which embraced terms of the Switchmen's Union agreement, and which was assumed by the Yazoo & Miss. Valley R. R. Co. Moore lost his former suit solely because it was held his old employment had been superseded by that on which he now

sues. The causes of action are not the same.

On the cross-appeal, we do not think that the earnings of the man next below Moore on the seniority roster measure Moore's damages. Moore was not a regular worker before his discharge, and it was proper to consider this in estimating his losses due to discharge.

The judgment is reversed because of error in striking the plea of three years' limitation, and the cause is remanded for further proceedings not inconsistent with this opinion.

HOLMES, Circuit Judge (dissenting).

This is a suit for damages for breach of a contract made for the benefit of a specific class of persons which included the plaintiff. The contract of employment between the plaintiff and the railroad company was made in Mississippi, was to be performed in Mississippi, and was therein actually performed until the date of his alleged wrongful discharge in the same state.

There is no federal question in this case, except as to matters of defense. Our jurisdiction rests solely upon diversity of citizenship. This action was originally instituted in a state court of Mississippi for damages in the sum of $3,000. It went to the Supreme Court of that state, which, reversing the trial court, held that the six-year statute of limitations applied and that the action was not barred. Moore v. Illinois Central R. Co., 180 Miss. 276, 176 So. 593. After it was remanded for retrial, and after the plaintiff had amended so as to claim more than $3,000, the case was removed to a federal court on the ground of diversity of citizenship. There is no federal statute of limitations involved here; only state statutes.

I cannot reconcile with Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the majority opinion wherein it urges uniformity of construction of a contract, operating in many states, as a basis of federal courts exercising an independent judgment. This argument, in one aspect, seems to be in accord with the view of the Supreme Court of Mississippi to the effect that this suit is upon a written contract. Later, however, the opinion holds that the written contract was merely adopted by the employee, either orally or impliedly when he went to work,

and, therefore, that the three-year statute applies.

Upon the facts before us, the federal court is not authorized to exercise an independent judgment, either as to the construction of the contract sued on or as to the applicable statute of limitations. Both are questions of state law, and we should follow the state court. The highest court of Mississippi has held that the action is not barred, and I think we are bound by its decision, since it does not appear that the state court has altered its opinion. Wichita Royalty Co. v. City Nat. Bank, 306 U.S. 103, 107, 59 S.Ct. 420, 83 L.Ed. 515.

For the reasons indicated, I dissent from the judgment of reversal.