28646, 28647. COWART v. ATLANTA, BIRMINGHAM AND COAST RAILROAD COMPANY; and *vice versa.*

DECIDED FEBRUARY 20, 1941. REHEARING DENIED APRIL 4, 1941.

*Eugene Talmadge, William A. Thomas,* for plaintiff.

*MacDougald, Troutman & Arkwright, Harllee Branch Jr.,* for defendant.

SUTTON, J. The present suit for damages was brought by James M. Cowart against Atlanta, Birmingham & Coast Railroad Company as a renewal of the action dealt with in *Cowart* v. *A., B. & C. Railway Co.,* 58 *Ga. App.* 466 (198 S. E. 795). The petition alleged, in substance, that the plaintiff had been wrongfully discharged from the service of the defendant on November 12, 1931. which he contended was contrary to the terms of his alleged contract with the railroad and in violation of a circular issued by the general manager of the railroad, adopting the "Brown System of Demerits," copies of such contract and circular being attached to the petition as exhibits. In the contract it was provided, among other things: "(c) Engineers will not be dismissed or demerited without fair and impartial hearing before proper officials, together with an engineer as his representative and witnesses that he may desire. (d) Discipline can only be imposed by the superintendent, superintendent of motive power, or master mechanic, and not enforced until one or the other of these officials has reviewed the case. (e) Should charges be preferred against an engineer he will be notified by the superintendent, superintendent of motive power, or master mechanic, and be given an investigation within ten days, except where trackage is in effect. If charges are sustained and he is dismissed or demerited, he will be notified in writing within ten days. Disciplining imposed will take effect within ten days from the time of investigation, otherwise said engineer will stand exoner-

ated and resume his former duties." In the "Brown System of Demerits" circular it was stated: "For minor lapses or infractions of rules a reprimand may be sufficient. For more serious offenses demerits will be recorded in denominations of 10, 20, and 30, according to the degree of the offense. An accumulation of 60 demerits will warrant a letter of warning. An employee accumulating 90 demerits in a 12-months period will be given an opportunity to explain his record, and failing will be dismissed from the service. Dismissal may also be employed in cases involving insubordination, disloyalty, perversion of mind, unfitness for service, dishonesty, untruthfulness, or other evidence of moral turpitude." In the petition it was alleged: "[Par. 44] That article XLI, subsection (a), of the contract of employment provided that not only should plaintiff, before he could be discharged, have a fair and impartial hearing, but also a fair and impartial appeal, which was contemplated by said contract. [Par. 45] That as aforesaid said joint appeal board or board of joint review, so contemplated, that was provided for in the contract consisted of ten members, five employees, and five officials, and that said contract also contemplated that before a decision would be effective it must be concurred in by two thirds of the members thereof. [Par. 46] It is shown that plaintiff was denied the privilege of appearing before the said board of joint review, and that the aforesaid officials were so notified by plaintiff that he could not be present because of sickness and by virtue of being called into the superior court of Fulton County, Georgia, and pursuant to said illegal, wrongful, and fraudulent design and intention of defendant, through its officials, proceed to and did have the hearing on said review or so-called review without plaintiff being there to introduce evidence or controvert the positions and findings of those who discharged him." The gist of the complaint was that as a yard engineer of the defendant railroad he had been discharged without being afforded a fair hearing and a proper review of his case by the board of joint review, and damages were prayed for the alleged breach of contract.

The defendant answered, denying liability, and also demurred to the petition on general and special grounds. The court sustained some of the special grounds, and the plaintiff filed exceptions pendente lite. The case proceeded to trial, and at the con-

clusion of the plaintiff's evidence, when the court was about to grant a nonsuit, the plaintiff's counsel requested that he be allowed time in which to prepare and file an amendment. A recess was taken, after which the plaintiff tendered an amendment reading as follows: "1. By adding a new paragraph to be known as paragraph 49 as follows, to wit: 49. That the joint reviewing board, as set up by the by-laws of the A., B. & C. Railroad Benefit Association and referred to in the contract attached to the petition and marked Exhibit 'A,' undertook to hear and pass upon and render a final decision in plaintiff's case, notwithstanding that he was unable to be present at the hearing, because at the time of said hearing your petitioner was in Fulton superior court in attendance upon a trial of a case brought against him and his wife, wherein the plaintiff sought a verdict of $15,000 damages, and your petitioner was unable to get excused by the presiding judge in said court for the purpose of attending the hearing before said reviewing board, and he so notified the board of his inability to be present at the time fixed, and asked for a continuance to a future date, but the board, despite said notification, arbitrarily refused any continuance and undertook to hear and determine his case, and evidence was introduced and witnesses examined without his presence and without any attorney present in his behalf or any authorized representation of him through any other person whatsoever. 2. By adding a new paragraph to be known as paragraph 50, to wit: 50. That the decision of said reviewing board was adverse to your petitioner, and it was the basis of the final discharge of your petitioner, and it constituted a fraud upon him and a denial of his rights under said contract and by-laws, and as a matter of law and fact was an illegal invasion of his property rights and a denial to him of a fair and impartial hearing on his said appeal. 3. By amending the prayer in said suit by adding thereto the following: That the original trial of your petitioner be set aside for the reasons hereinbefore stated, and that your petitioner be declared to have been an employee of the defendant A., B. & C. Railroad Company at all times mentioned in the original petition." This amendment was objected to by the defendant, on the ground, among others, that it was contrary to the evidence offered by the plaintiff and not conforming thereto. The court disallowed the amendment, and the plaintiff filed exceptions pen-

dente lite. The court, on motion of the defendant, thereupon entered a judgment of nonsuit. The plaintiff excepted, assigning error on the sustaining of the special demurrers, the disallowance of the amendment, and the grant of nonsuit.

■ No error is shown by the record in the judgment sustaining the special demurrers.

■ The question of the alleged error of the court in disallowing the proffered amendment, depending, as we think, upon the evidence introduced by the plaintiff, may be considered in connection with the assignment of error on the grant of nonsuit. The evidence for the plaintiff was quite voluminous, but the portion necessary for a determination of the questions here involved may be summarized as follows: The plaintiff worked for the defendant railroad as a switch engineer in its Bellwood Yards in Atlanta. On the night of November 4, 1931, while switching cars, he failed to apply the brake on his engine in time to avoid running into an empty gondola car standing on a side-track. The evidence was conflicting as to whether he had received a proper signal in time to avoid the impact. At the request of a member of his crew he was operating his engine with the headlight turned off, although the written rules of the company required that the headlight be burning. The wheels of his engine were flattened by sliding when the brake was put on suddenly, and repairs had to be made. J. F Bauknight, general foreman of the mechanical department, advised the plaintiff that an investigation would probably be called, and the plaintiff answered that he was willing to face it. This conversation took place on the morning after the accident, and on November 7, 1931, he was notified that the investigation would be held on November 9, 1931. This investigation was held on that date, at Bellwood Yards, by Harry Huddleston, general superintendent, and C. C. Persons, master mechanic, the officials under whose immediate direction the plaintiff and the other members of the train crew worked. The plaintiff attended the investigation and was present while every member of the train crew testified. A finding was made that the collision was due to the failure of the plaintiff to follow signals given to him by a member of the switch crew and the plaintiff's failure to apply the brakes in time to avoid the accident. The plaintiff, at the conclusion of the investigation, was informed of the finding. On November 12,

1931, within ten days as required by his contract, the general superintendent and the master mechanic, the proper officials designated by the contract, notified the plaintiff in writing that the facts brought out at the investigation, "together with facts brougnt out in previous investigations of complaints concerning your service at Bellwood, proves to us conclusively that you are an unsafe employee for this company, and for your responsibility in connection with this investigation, and your past services, you are relieved from the service of the company." This notice was received by the plaintiff on November 13, 1931. The plaintiff's past record, referred to in the notice, contained demerits and disciplinary action, all of which the plaintiff admitted, beginning with September 15, 1924, and ending January 2, 1931, involving such matters as getting his engine out late and delaying his work, not protecting his duties, running through a switch with his engine, reprimand for conduct on switch-engine on January 3, 1925, twenty days suspension for allowing a switch-engine to occupy the main line in the face of an N. C. & St. L. Railroad train on February 6, 1925, responsibility in connection with an accident between a switch-engine of the defendant and an N. C. & St. L. Railroad engine in Bellwood Yards, and the making of an incorrect report to the yardmaster, removal for a time from Bellwood Yards on account of a controversy with fellow employees, reprimands in 1925, running through S. A. L. Railroad switch at Howell Yard on September 16, 1928, shortly after he had returned to the railroad after a sick leave which he took in 1925, reprimand for responsibility in connection with injury to a switchman in Bellwood Yards on April 29, 1930, demerits for responsibility in connection with accident between switch-engines on July 23, 1930, near Bellwood Tower, a total of 115 demerits imposed on him during his service.

The removal of the plaintiff from the Bellwood Yards, as above stated, was in consequence of an investigation of a complaint signed by practically all of his fellow employees there that they were afraid to work in the yard with him. To be near his doctor, and on his assurance that there would be no occasion for further investigation as to his work, he was permitted to return to service at Bellwood Yards. All of the demerits and reprimands above mentioned were made only after investigations at which the plaintiff

was present and where he was given an opportunity to have representation if he desired, but in every case he waived his right to be represented. His discharge on November 13, 1931, was based on his record as an unfit and unsafe employee, as shown by the written notice which was given him by the proper officials. J. F. Bauknight, the official in charge of repairs of the defendant's engines at Bellwood Yards, and who, as a friend of the plaintiff, sought to get him reinstated, testified that the record of demerits and reprimands as set forth above was itself sufficient to show "unfitness for service" and authorizing dismissal from the service of the company. After his dismissal on November 13, 1931, the plaintiff applied to the committee of engineers, contemplated by the employment contract, to appeal for him to the joint board of review, consisting of five employees and five representatives of the management. The appeal was prosecuted by the committee, pursuant to the by-laws of the A., B. & C. Relief Association, and as provided for in the plaintiff's contract of employment, and under which by-laws it was provided that the decision of the joint board of review should be final. The plaintiff was notified in writing that the appeal would be heard on February 24, 1932, and that he could personally appear in the interest of his appeal. When he did not appear he was communicated with by telephone, and he advised the board that he was in Fulton superior court and could not get away, but authorized them to go ahead without him. Thereupon the board considered the appeal, and after due deliberation voted to affirm the discharge of the plaintiff. Five of the members of that board were fellow employees of the plaintiff, and all of them, as did the five members representing the management, voted for affirmance of the discharge. The decision of the board was entered on February 24, 1932, and the plaintiff was notified in writing of that decision. Under the terms of the contract sued on, it became final, and the plaintiff made no effort to have it reversed or set aside. While he alleged in his petition that he reported regularly to the defendant to perform services as an engineer, and was refused, the evidence shows that he obtained by suit against the A., B. & C. Railroad Benefit Association, a relief association composed of his fellow employees and supported by their contributions, the sum of $3000, on the ground that he was permanently and totally disabled, and on a claim against an insurance company

he was paid about $600 on the same ground. After these claims had been settled, he brought the suit of which he alleged the present suit is a renewal, and which first suit was filed on October 10, 1935, representing that he was ready and able to work, and that the railroad was breaching its contract in not permitting him to do so, and which first suit was more than three years after his discharge had been affirmed by the joint board of review.

In view of the admissions of the plaintiff, and the evidence introduced on his behalf, it is clear that the proffered amendment, which was disallowed, did not conform to the evidence, but was contradicted thereby, and the court properly rejected it. The amendment contained allegations to the effect that the joint board of review undertook to render a binding decision against him without affording him the right to be present, that he asked for a continuance, but the board arbitrarily refused his request, that he was without any representation whatever, and that the action of the board constituted a fraud upon him and a denial of his rights under his contract and the by-laws of the association. On the contrary, the evidence conclusively shows that he waived representation and instructed the board to go ahead without him. The amendment was substantially a reiteration of the charges made in paragraphs 44, 45, and 46 of the petition, under which any evidence of unfair or fraudulent conduct on the part of the board of joint review might have been introduced. Instead of showing such a state of facts, the plaintiff's evidence showed that he had had a fair trial and a fair review by a properly constituted board, and that he waived any right of personal appearance or representation by counsel or otherwise. His testimony was entirely inconsistent with the charge of fraud alleged in the petition and sought to be similarly set out in the amendment, and no effort was made to retract it. The amendment not materially affecting the case as already alleged, and all the pertinent facts and documentary evidence having been actually admitted in evidence, and the amendment not conforming to the proof adduced, its rejection was not error. See *Hadden* v. *Larned*, 87 *Ga.* 634 (13 S. E. 806); *Leavitt* v. *Leavitt*, 149 *Ga.* 601 (2) (101 S. E. 670); *London* v. *Citizens & Southern National Bank*, 60 *Ga. App.* 154, 165 (3 S. E. 2d, 136), and cit.

The evidence introduced by the plaintiff entirely failed to show

that he had been wrongfully discharged from the service of the defendant, and the court did not err in entering a judgment of nonsuit. Counsel for the plaintiff relies on *Gary* v. *Central of Georgia Ry. Co.,* 37 *Ga. App.* 744 (141 S. E. 819). In that case, however, the engineer's discharge was based upon the accumulation of ninety demerits which, under the system of demerits in effect between the defendant and the plaintiff, would subject him to dismissal only after a fair and impartial trial and the allowance to him of a period of thirty days within which to appeal from the decision. This court held that under the allegations of the petition the plaintiff's dismissal was premature, in that he had not been given a trial on the question of the right of the defendant to dismiss him because of the accumulation of ninety demerits, but had been dismissed merely because the company's record showed that he had received ninety demerits. In the present case the plaintiff was not dismissed merely because he had accumulated ninety demerits, which might or might not of themselves indicate inefficiency on the part of the employee, but because of unfitness for service. Under the "Brown System of Demerits," in effect between the parties, the employee was subject to dismissal, after trial and review, as in the *Gary* case, because of the accumulation of ninety demerits; and if only the question of the right to discharge on that ground had been involved here, the ruling in the *Gary* case would be applicable. However, in the present case the employee was subject to be discharged for causes which were independent of an accumulation of a total of ninety demerits within twelve months, namely, "insubordination, disloyalty, perversion of mind, *unfitness for service,* dishonesty, untruthfulness, or other evidence of moral turpitude." (Italics ours.) "Unfitness for service" was assigned as the reason for the discharge of the plaintiff engineer. He was notified, after the hearing on the question of responsibility for flattening the engine wheels on November 4, 1931, that the facts brought out in that investigation, "together with facts brought out in previous investigations of complaints concerning your service at Bellwood, proves to us conclusively that you are an unsafe employee for this company, and for your responsibility in connection with this investigation, and your past services, you are relieved from the service of the company." The offenses of which he had previously been found guilty, and with re-

spect to which he had in every case been afforded a fair hearing, were all admitted by him, and the head of the mechanical department at Bellwood Yards, Mr. J. F. Bauknight, who showed much friendly solicitude towards the plaintiff and sought to have him reinstated notwithstanding his transgressions, testified that they were, in connection with the guilt of flattening the engine wheels, sufficient to demonstrate "unfitness for service" and to authorize the engineer's discharge. Under the record in this case the dismissal of the plaintiff from the service of the defendant was fully justified, and he was not deprived of any right under his contract or the "Brown System of Demerits" or otherwise. The court did not err in entering the judgment of nonsuit.

The defendant filed exceptions pendente lite to the judgment overruling certain grounds of its demurrer, and by cross-bill of exceptions error is assigned thereon. In view of the foregoing rulings it is unnecessary to pass on such assignments of error.

*Judgment affirmed on main bill of exceptions. Cross-bill dismissed. Stephens, P. J., concurs. Felton, J., concurs specially.*