30209. HORNSBY *v.* SOUTHERN RAILWAY COMPANY.

DECIDED JANUARY 5, 1944.

*William A. Thomas,* for plaintiff in error.
*Neely, Marshall & Greene,* contra.

BROYLES, C. J. H. L. Hornsby sued the Southern Railway Company to recover damages for the alleged breach of a contract of employment. After the petition had been twice amended the court dismissed it on general demurrer, and to that judgment the plaintiff excepted.

The original petition averred substantially that on November 15, 1935, the defendant breached "the contract of employment which defendant had with him in writing," and discharged him from its service "at a time when plaintiff was holding, under the contract and rules and regulations of the Brotherhood of Locomotive Firemen and Enginemen, a position of seniority as a locomotive fireman, in the employ of defendant, in the Atlanta yards;" that "at the time plaintiff was discharged, he had been working for defendant as a locomotive fireman for a period of several years under the contract in writing and the Brown system of merits and demerits;" that "his contract of employment was in writing and was in full

force and effect at the time of his discharge;" that "by the terms of said contract of employment . . petitioner was a fireman and could not be legally demerited or discharged . . until after a full hearing, and the benefit of his rights as provided and contemplated for him in said contract in all its provisions;" that "a copy of said contract could not be attached to the petition because he had no copy, and the original contract was in the defendant's possession;" that "from the time of his discharge up to the filing of this suit, plaintiff performed and acted in strict compliance with his contract of employment, and now stands ready to continue to perform his contract;" that "when he was so illegally discharged he was 38 years old, in good health, and with an expectancy of living and working until he was 72 years of age;" that "at the time of his discharge he was earning approximately $5.72 a day, without over-time; that from the date of his discharge up to the filing of this action, if defendant had not breached its contract with him, he could and would have earned at the rate of $5.72 a day, regular time, $8,477.04, which he had not earned because of said breach of the contract." He prayed "for a judgment in the sum of $8,477.04, plus increased pay which he could have earned, and plus the over-time which he could have earned."

In response to demurrers, the petition was amended by attaching a copy of the written contract under which he was working at the time of his discharge. This was a pamphlet of seventy-four pages entitled: "Southern Railway Company. . . Schedule of wages and rules and regulations for firemen, hostlers and outside hostler helpers. Edition No. 6. Effective June 16, 1927." On page 68, under the heading, "Terms of Agreement," appears this statement: "This agreement shall continue in effect from June. 16, 1927, to June 16, 1928, and thereafter subject to thirty days' notice." This was signed by "R. J. Tillery, General Chairman Firemen's Committee," and by "H. W. Miller, Vice-President." In the amendment the plaintiff specifically pleaded only "a part of article 31 (a) of said contract." Subsection (a) of article 31 (with the parts thereof omitted by the plaintiff enclosed in parentheses) follows: "Firemen, hostlers and outside hostler helpers will not be discharged or demerited without the authority of the superintendent, and, after he has reviewed the evidence, he will give the fireman, hostler or outside hostler helper an opportunity of being heard in

his defense. (The investigation will be held by proper officer within five days, if possible). The accused fireman, hostler or outside hostler helper and his representative will have the privilege of hearing all evidence submitted and interrogating all witnesses. A fireman, hostler or outside helper will have the privilege of having another employee in engine service with him at the investigation, to assist him, provided such assistant is in good standing on the division. (If found blameless, he will be paid for time lost and placed back on his run or job. If discharged or demerited, he will be advised within thirty days of the cause and, if requested in writing, written statement showing cause will be furnished him within fifteen days from date of receipt of request)." After pleading that part of subsection (a) of article 31 as above indicated, the plaintiff alleged in the amendment substantially that on January 22, 1935, the defendant, without cause and contrary to the terms of his contract, discharged him, without allowing him any hearing, without an opportunity of interrogating witnesses, and without notice of any hearing or investigation or wrong he had allegedly committed, "on account of being an undesirable employee, in the opinion of defendant;" that "on information and belief" he had been working for defendant under said contract in writing, as shown by exhibit A, and under the "Brown system of merits and demerits, shown by exhibit B and attached hereto by reference," since June 16, 1927, up to and through the date of his discharge; that "under the Brown system of merits and demerits an employee was demerited for minor infractions rather than laid off; that although under said Brown system petitioner's record was clear of demerits," defendant discharged him, and this discharge constituted "a fraudulent and wrongful breach of his contract and of the Brown system aforesaid which was contemplated by said contract shown as exhibit A;" that plaintiff performed "each and every duty which defendant required him to do as a fireman of a locomotive engine effectively, and that on the date of his discharge . . had a 'clear record' with defendant." The copy of the Brown system of merits and demerits attached to the petition provides, among other things, that "the penalty for neglect of duty and bad conduct shall be a reprimand, book suspension, or dismissal from the service;" that "discipline for offenses such as necessitates dismissal or discharge from the service of the company under the rules will be continued;" that

"discipline record book will be kept in the superintendent's office in which an entry shall be made of every case of neglect of duty, violation of rules, bad conduct, etc., with the penalty imposed;" that "there shall also be kept in this book a credit account in which record shall be made of excellent conduct, deeds of heroism, loyalty, etc., which shall be given full consideration in connection with the charges entered against each employee;" that "these books will be open to the inspection of any employee for examination of his own record;" that "bulletins will be issued stating briefly . . the cause for each case of discipline, omitting name, date, train, and location," and each employee disciplined will be furnished with a copy of the bulletin bearing on his case, giving expense to the company of property damaged or persons injured by his carelessness or failure to observe rules; "that the record of employees will be examined from time to time by the superintendent (and other officers), and if it should appear that any employee is not a desirable person for the service, after a full consideration of his record, he may be discharged;" that "when an employee accumulates 100 demerits he will be dismissed from the service," and when he "has accumulated 90 demerits . . he will be notified and his record discussed;" that "any employee having demerits against his record will be credited with five merits for each six months of clear record, until his entire record is clear;" and that "each employee will be afforded an opportunity for appealing against any decision, but said appeal must be made in writing within ten days of receipt of notice."

The second amendment to the petition alleged substantially that "the Brotherhood of Locomotive Firemen and Enginemen is a trade union organization of which he was a member in good standing at the time of the employment of petitioner," at the time he was discharged, and since he was discharged; that said brotherhood "was his agent which did enter into the contract with . . defendant, said contract being exhibit A . . ;" that "at the time petitioner was illegally discharged . . , although petitioner demanded from . . defendant the writing of charges and the evidence, if any, upon which any alleged charges were based, as contemplated by exhibit A : . , which was and is his contract of employment, said defendant did not and has not furnished said charges or evidence or anything to . . plaintiff in accordance with the said

contract of employment as provided by the contract;" and "that for the reason that he was never given any hearing or any. writing of any alleged charges against him, or claimed to be against him . . he was thwarted from endeavoring to appeal his said claim by defendant and fraudulently discharged."

Without considering. the other reasons advanced by counsel for the defendant in error to sustain their contention that the general demurrers were properly sustained, we are of the opinion that the judgment of the trial court must be sustained because the plaintiff did not allege a compliance with the requirement of subsection (b) of article 32 of the agreement alleged to have been breached by the defendant that, "no grievance will be entertained unless presented in writing to the superintendent within thirty days after its occurrence by the fireman, hostler, outside hostler helper or the committee of his choice." In the case of *Crow* v. *Southern Ry. Co.,* 66 *Ga. App.* 608 (18 S. E. 2d, 690), where an agreement somewhat similar to the one involved in the instant case was alleged to have been breached, the defendant pleaded the following provision of section 32 of that agreement: "No grievance will be entertained unless presented in writing to the superintendent within sixty days after its occurrence. Trainmen, yardmen, and switch tenders shall have the right to appeal, provided such appeal be made in writing within sixty days after the superintendent had rendered his decision." In the *Crow* case this court held: "The evidence demanded a finding that the plaintiff did not file with the superintendent, or anyone else, any grievance or protest as to his discharge within sixty days, as provided for in section 32 of the agreement, or at any other time. Consequently, the court did not err in directing a verdict for the defendant and in overruling the plaintiff's motion for a new trial."

While the *Crow* case involved the direction of a verdict for the defendant, and not a judgment sustaining general demurrers to a petition, as does the instant case, it at least fortifies our conclusion, reached from a careful study of the agreement here involved, that the amended petition in the instant case was fatally defective because it failed to show compliance by the plaintiff with the requirement of subsection (b) of article 32 of the contract pleaded, that he present any grievance to the superintendent in writing within thirty days after its occurrence in order to have it entertained; and

we hold that the general demurrers to the petition as amended were properly sustained. A careful reading of the case of *Gary* v. *Central of Georgia Ry.*, 37 *Ga. App.* 744 (141 S. E. 819), relied on by the plaintiff in error, discloses that it is differentiated by its facts from the instant case.

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*