## McGlohn *v.* Gulf & S. I. R. R. Co.

(Division A. May 17, 1937. Suggestion of Error Overruled September 27, 1937.)

[174 So. 250. No. 32533.]

Jo Drake Arrington, of Gulfport, for appellant.

Gardner & Backstrom, of Gulfport, E. C. Craig, of Chicago, Ill., and Bruch, Minor & McKay, of Memphis, Tenn., for appellee.

Argued orally by **Joe Drake Arrington,** for appellant, and by **Oscar Backstrom,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

In the court below a demurrer of the Gulf & Ship Island Railroad Company was sustained to the declaration of the appellant, F. N. McGlohn, who declined to plead further, and the suit was finally dismissed. An appeal therefrom is prosecuted to this court.

The declaration alleges that the appellee is a railroad corporation engaged in the business of transporting passengers for hire, operating a railroad from Gulfport to Jackson, Miss., for many years prior to June 4, 1932, and continuously since. On each passenger train operated by the appellee is a conductor who is employed and paid by the company, and who performs the duties and assumes the responsibilities usually appertaining to the position of railway conductor on a passenger train.

It is further alleged that the Order of Railway Conductors, of which appellant was a member, and other servants employed by the appellee, entered into an agreement with the appellee as to the rules, rates, and conditions which should apply to them mutually and govern their relationships, define their rights, responsibilities, and duties under the circumstances of their employment, and, particularly, the manner in which their employment might be terminated by the railroad company. This agreement or schedule was agreed upon and adopted by the railroad company and the railway conductors in the year 1924, becoming effective on the 17th day of December, 1924, and has continued in force since that date.

A copy of the schedule was attached to the declaration, and article 30 thereof reads as follows:

"Investigations

"Conductors will not be demerited, disciplined or discharged without just cause. When such action shall become necessary the accused shall be duly apprised in writing, within ten days after knowledge of the occurrence, the nature of the charge or charges that are brought against him; and within ten days after such notification he will be given an investigation by the proper officer of the railroad at which time all evidence in the case will be submitted. A proper record in the case will be kept, authenticated by both parties, and made the basis for any discipline that may be administered, or an appeal to a higher officer. The accused will be permitted to attend the investigation, hear all the evidence submitted and be represented by fellow employees of his own selection. Within five days after the investigation closes, the proper officer will render a decision and advise the accused in writing, the penalty imposed. If the decision is unsatisfactory, the accused, through his representative will have the right to appeal to higher officers of the railroad. In the event the charge or charges are not proven the accused will be promptly restored to the service with full rights and paid full wages for any time he may have lost as a result of the charge or investigation."

The declaration further alleged that the railroad company established a pension system for its employees, according to which those of its servants who have been continuously in its service for a period of not less than 20 years become entitled to a pension upon retirement from the railroad service, the amount of the pension depended upon the number of years service, each additional year after the requisite 20-year service period effectuating an increase in the amount of the pension, which is paid monthly to those entitled to it.

It was further alleged that appellant entered the employment of the railroad company about the 1st day of June, 1907, and remained continuously in its service for

a period of 25 years, or until the 4th day of June, 1932, when the appellee railroad company discharged him summarily, and without just cause; that appellant was employed then, and previously, as a conductor on a passenger train of the appellee; that he performed his duties daily on said train, and received a salary of $228 per month of 30 days; and that, having served in such capacity for more than 20 years, he had become entitled to a pension in the approximate sum of $75 per month, which amount would increase yearly, contingent upon his remaining in the active service and employment of the railroad company.

The declaration further alleged that he had at all times performed his duties with fidelity, with dispatch, and efficiently, and continuously and faithfully performed his obligations under his contract of employment as a conductor for the appellee; that under that contract, and in virtue of article 30 thereof, it was the duty and obligation of the railroad company to permit the appellant to continue to serve it in the capacity of a railway conductor at the salary of $228 per month of 30 days, pending the appellant's voluntary retirement from the service, or else the occurrence of a just cause for his discharge by the appellee, according to article 30 of the schedule; that notwithstanding appellant's right, and particularly in violation of article 30 of the schedule, appellee did, on June 4, 1932, discharge the appellant without just cause and in violation of the appellant's contractual rights and the appellee's contractual obligations to him, and has continuously since said date refused to retain or employ the appellant in its service; and by reason of appellee's breach of its contractual duties and obligations to him, appellant had lost and been deprived of all the wages or salary he otherwise might and would have derived and acquired from being continued in the service of the appellee—the appellant having been eager, ready, able, and willing to re-enter the service of appellee as a conductor—to-

gether with the pension rights which otherwise he would have obtained and been entitled to exercise and enjoy upon his retirement from the appellee's service.

Without quoting the demurrer, the declaration was challenged mainly on two grounds: (1) The contract sued on is unenforceable, for the reason that it is unilateral and lacks mutuality; and (2) the declaration states no cause of action even if the contract sued on were valid, for the reason that the declaration does not allege that the remedy provided for by the contract was pursued, exhausted, or denied to the appellant, or arbitrarily or oppressively administered.

On the first ground of demurrer, the argument of the railroad company is, that there are no mutual covenants contained in the contract; that no single individual conductor is required to perform one day's service for the railroad company, nor is the Order of Railway Conductors required to furnish a single railway conductor to perform such service; and that the allegations of the declaration do not set up any outside independent consideration moving to the railroad company from the appellant.

In considering this case, we think it proper to state that the schedule or contract relied on by the appellant is signed by the appellee, the railroad company, through its general superintendent, and for the employees, the Order of Railway Conductors, by their general chairman and two committeemen. The schedule or contract purports to set forth the rate of pay; and, generally, the terms of working conditions, hours, how the time shall be calculated, overtime, the pay of passenger and freight conductors while on duty; seniority rules—that the conductors in order of their seniority should be ready to report for duty; that when a conductor for an unavoidable cause cannot respond for duty, notice is to be given to the train master; conditions of promotion; and the method of handling grievances.

Article 35 provides that the "rules, rates, and condi-

tions herein set forth constitute an agreement and will supersede all former agreements, rules and interpretations thereon and will not be changed or abrogated until after thirty days' notice in writing by either party; except that it is understood that further increases in rates, or changes in arbitrary allowances, rules or conditions issued by the United States Railroad Labor Board will apply. The rules, rates and conditions herein set forth constitute an agreement effective Dec. 17th, 1924, and will supersede any former agreements, rules and interpretation thereon, continuing in effect for one year, and will not be thereafter changed or abrogated until after thirty (30) days' notice in writing by either party to the other.''

The contract as negotiated here between the Order of Railway Conductors for the employees in that branch of the service and the railroad as employer, upon which appellant relies, is usually called collective bargaining, and it is in the nature of rules by which the employer and the individual employees are to be governed in such line of service. It cannot be doubted here that the appellant was a member of such union, and one for whose benefit the contract, generally, was negotiated and executed. By the terms of the contract entered into in 1924, here involved, it is clear that a contract had been entered into prior to that time due to changed conditions or dissatisfaction of either or both the employer and employees here interested; this then new contract was executed, which, by its terms, was to run for one year and to be extended indefinitely until terminated by 30 days' notice of either party to the contract. This contract was general in its nature, and it is alleged in the declaration that appellant continued in the service of the railroad company under its terms.

This court held in the case of Yazoo & M. V. R. Co. v. Sideboard, 161 Miss. 4, 133 So. 669, that a freight brakeman, although not a member of the union, could bring his suit and maintain an action under the contract

for the wages earned thereunder, but declined to follow the case of Hudson v. Cincinnati, N. O. & T. P. R. Co., 152 Ky. 711, 154 S. W. 47, 45 L. R. A.. (N. S.) 184, Ann. Cas. 1915B, 98, in which it was held that the individual employee, a member of the union, could not maintain an action for a breach of the contract by a union similar to the one here involved. .

The contract here under consideration was entered into between the employer and the labor union, mainly, for the purpose of securing certain rights and benefits to its individual members, article 30 of the schedule being a part thereof. The declaration alleges that the railroad company violated this article in summarily discharging the appellant. While the language of the pleader as to this article might have been clearer, it could only mean that appellant was not given notice in writing of the charges brought against him and that the manner of the investigation provided for thereunder was ignored by the railroad company. If that contract may be enforced, it is the duty of the railroad company to institute such proceeding—that was the solemn agreement entered into by the union for and in behalf of all its members employed by the railroad company. It must be remembered that this general collective bargaining secured to the railroad company trained, disciplined men, subject to the orders of their union, in a measure, and to the call of the railroad company at any and all hours, and, presumably, provided a higher type of trained men as conductors.

Article 30, the section invoked here and under consideration, was designed by the union to protect its members from unreasonable, arbitrary, and unjust dismissal by the company from their employment. They were thereby rendered free from the whims, caprice, or passion of one immediately superior, and limited his right to discharge them. This, in a measure, insured peace and protection to the employee who entered in the service in knowing that he could only be demerited, suspend-

ed, or discharged by a trial, with the right of appeal to higher and fairer officials of the railroad company to supervise his case; that his case would be brought to their attention; and that presumably it would be heard without the antagonism engendered between him and his immediate superior or foreman, or without prejudice. On the other hand, this provision benefited the railroad company also, in that, as employer, its management would know that it tended to prevent revolt in the ranks of its employees from immediate sympathetic strikes caused by a real or imaginary wrong done to one of them, and thus to a great extent insured harmony between the employer and employees, raised the morale of the employees, which condition tended to secure their loyalty and esprit de corps in the service of the master. If we say in this case that the contract was terminable at will, and, therefore, could be ignored by the employer, then we have put the axe to the root of this agreement and have practically destroyed collective bargaining, so far as its enforcement is concerned in this state. The cases cited by appellant were Hudson v. Cincinnati, N. O. & T. P. R. Co., supra, St. Louis, I. M. & S. R. Co. v. Matthews, 64 Ark. 398, 42 S. W. 902, 39 L. R. A. 467, and Davis v. Davis, 197 Ind. 386, 151 N. E. 134, and seem to hold for the exact contention of the appellee in the case at bar. These cases, however, were not followed in the case of Yazoo & M. V. R. Co. v. Sideboard, supra.

We are of the opinion that the contract of the union was not void, for the reason that it is terminable at the will of either party. True it is that the employee was not bound to a state of servitude for life, and that the particular conductor here could have left the service if and when he pleased so to do. The contract, fairly interpreted, is that the railroad company agreed with these employees that the length of service of the particular employee, so far as the railroad was concerned, would be until a trial—completely under the control of

the employer—should be had in accordance with article 30 and might be terminated in the manner therein provided; in other words, while the railroad company, generally, may have the right to terminate the contract at its will, a solemn stipulation was made by it by which it is bound not to exercise such will in a summary manner, but in a certain well-defined manner and by a stipulated course of procedure. We conclude that this section was a material, substantial part of this contract by which appellant was induced to enter into and continue in this employment, and a part of the promised consideration therefor.

We think this stipulation takes the particular case from under the rule as announced in the case of Rape v. Mobile & Ohio R. Co., 136 Miss. 38, 100 So. 585, 35 A. L. R. 1422. In that case the employees of the railroad went on a strike, during which time appellant applied and was employed by the railroad company, with the promise of a permanent position, but afterwards, when the strikers returned to work, was discharged. Rape contended that he had entered the service of the railroad company on an oral agreement of permanent employment. It was there held that the contract was terminable at the will of the railroad company, and, further, that it did not come within the exception because the contract of employment was not supported by an independent consideration moving from the employee to the employer.

" On its face the agreement by the union in this case contemplates service for a long time; and when we consider that the declaration herein alleges that employees were assured by the employer that, if an individual employee remained in the service for a period of 20 years, a pension would be allowed him, we think that was another strong inducement for an employee to remain in the company's service; in other words, it was an additional payment of a stipulated sum for long, continued service. The employer must have considered

that this pension, so-called, whether gratuitous or not, would add to the effectiveness, loyalty, and esprit de corps of its servants engaged as conductors. There was an express agreement on the part of the railroad that it would not terminate this particular contract without just cause, and that to be ascertained by the procedure outlined in article 30. We can see no good reason for declaring the agreement invalid.

As to the rule announced in the Rape Case, supra, we can only say that the court was not there dealing with a contract negotiated between the union and the railroad. It was an individual contract, which did not provide anything for the railroad save the service of the single individual. We think the contract is binding upon the railroad, and that the language of the declaration puts upon the railroad defensively the burden of showing that it discharged the appellant for a just cause, and according to the procedure outlined under the particular section, article 30. This distinction from the general rule is to be found in the cases of St. Louis, B. & M. R. Co. v. Booker (Tex. Civ. App. 1928), 5 S. W. (2d) 856; Gary v. Central of Georgia Railway Co., 37 Ga. App. 744, 141 S. E. 819; Crotty v. Erie R. Co., 149 App. Div. 262, 133 N. Y. S. 696; Rentschler v. Missouri Pac. R. Co., 126 Neb. 493, 253 N. W. 694, 95 A. L. R. 1. We cite the last-mentioned case with approval only on the precise point decided here and for the collation of authorities in that opinon, together with the notes in A. L. R.

We are, therefore, of the opinion that the contract in this case was not legally terminated on the allegations of the declaration; that it has already been decided by this court that a member of a union or organization may maintain an action on the contract of the union, made for his benefit, the authorities therefor being cited in the case of Yazoo & M. V. R. Co. v. Sideboard, supra.

As to the second ground of demurrer, we think the

allegations of the declaration are sufficient to show that the railroad company had not complied with article 30 in effecting the termination of this contract by the discharge of the appellant. It was admitted in the demurrer that the appellant had been summarily discharged in violation of article 30 of the schedule. On the whole, the allegations of the declaration are sufficient to withstand the demurrer in this case. We are not called upon to make further announcement as to the sufficiency of the allegations with reference to the pension as an element of recoverable damages here, nor are we called upon to announce the precise rule for the determination of damages in such a case until the facts have been developed.

Reversed and remanded.