Ann SAMPLES, Plaintiff,

v.

HALL OF MISSISSIPPI,
INC., Defendant.

Conner DILLINGHAM, Plaintiff,

v.

HALL OF MISSISSIPPI,
INC., Defendant.

Nos. EC85–355–LS–D, EC85–375–LS–D.

United States District Court,
N.D. Mississippi, E.D.

June 22, 1987.

Amended Opinion and Order
July 21, 1987.

John Booth Farese, Ashland, Miss., for plaintiffs.

Wendell H. Trapp, Jr., Corinth, Miss., and Stephen X. Munger, Atlanta, Ga., for defendant.

## MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SENTER, Chief Judge.

These are actions for breaches of oral promises of employment and for tortious interference with an employment relationship. Defendant has filed motions for summary judgment as to the claims of both plaintiffs and as to its counterclaims for breach of a release agreement. For the reasons stated below, the court is of the opinion that defendant's motions as to plaintiff's claim of tortious interference with a business relationship are well taken and should be granted. The defendant's other motions on summary judgments are not well taken and should be denied.

### I. Facts and Background.

The asserted facts are as follows: Hall of Mississippi, Inc., is a printer of magazines and other materials with a plant located in Corinth, Mississippi. Both plaintiffs were employed by the defendant in salaried positions, Conner Dillingham as engineering/maintenance coordinator and Ann Samples as clerk/typist. Hall of Mississippi, Inc., maintains a set of supervisor's guidelines with policy set forth on terminations for cause and reductions in force. Both plaintiffs were familiar with these guidelines, Dillingham as a former supervisor and Samples because updating the pressroom copy of the guidelines was part of her duties. Both plaintiffs and eight other salaried employees were terminated on May 3, 1985. The defendant called these terminations a reduction in force. Both plaintiffs signed release agreements and received severance pay in return. The plaintiffs stated that these release agreements were not explained and that they were threatened with not receiving severance pay if they did not sign a release. As the facts in the two cases are similar and the issues are identical, the motions in these cases will accordingly be considered together.

### II. Contentions of the Parties.

Each complaint, as amended,[1] states two claims in diversity. The plaintiffs both allege breaches of oral employment contracts. Dillingham states that he was told after his transfer to engineering/maintenance coordinator that "as long as you do your job, you have a job." Dillingham points to his work during union organizational campaigns and his service as chief of the fire brigade as consideration for this promise. Samples states that similar promises were made to her and cites as consideration that she was a good employee. Both also point to the supervisor's guide provisions concerning termination for cause and

---

1. Conner Dillingham had originally alleged discrimination on account of age, and Ann Samples had alleged discrimination on account of sex. Both of these claims were dismissed on plaintiffs' motions.

reductions in force as implying contract for permanent employment.

Both complaints also allege that the managers of the firm, by terminating the plaintiff's employment, tortiously interfered with the employment relationships between the plaintiffs and Hall of Mississippi, Inc. These claims are not pressed against the individual managers, but rather against the defendant corporation on an agency theory. Dillingham alleges that there was no reduction in force and that his termination was part of a conspiracy among the managers to protect another supervisor previously disciplined for homosexual activities on the job. Samples alleges that there was no reduction in force and that her termination was solely on account of her absenteeism.

The defendant counterclaims against both plaintiffs on the grounds that the commencement of the present actions breached the release agreements signed by the plaintiffs in return for severance pay. Both plaintiffs state that the purpose of the releases was not explained and that they were told that they would not receive severance pay unless they signed these release agreements. .

III. Conclusions of Law.

A. Standard for Summary Judgment.

This cause is under consideration through motions for summary judgment. Summary judgment "shall be issued forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To preclude the granting of summary judgment, any factual dispute must be both *genuine* and *material.* *Anderson v. Liberty Lobby,* 477 U.S. 242, ——, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). An issue of fact is considered material if its outcome is determinative in the relevant area of substantive law. *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987). Genuine factual issues are those "that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Liberty Lobby,* 477 U.S. at ——, 106 S.Ct. at 2511, 91 L.Ed.2d at 211.

To support a motion for summary judgment, the moving party must inform the court of "the basis for its motion, and identifying those portions of [the summary judgment evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986). If the moving party meets this burden, the nonmoving party must show either that there is "a genuine issue of fact concerning an essential element of the claim on which judgment is being sought" or good reason why it is unable to present such facts. *Bordelon v. Block,* 810 F.2d 468 (5th Cir.1987).

B. Application of Mississippi Law under *Erie Railroad v. Tompkins.*

Mississippi law controls the disposition of each of the three issues presented in this case, and this court is therefore bound to apply the law in the same manner as a Mississippi court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *DiPascal v. New York Life Ins. Co.,* 749 F.2d 255 (5th Cir.1985). The Fifth Circuit has stated in regard to such application that

As a federal court, "it is not for us to adopt innovative theories of [state law], but simply to apply that law as it currently exists," and to rule as we believe the state's highest tribunal would rule. We are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best. If the law of Mississippi is to be changed, "[i]t is up to the Supreme Court of [Mississippi] and not this court to change the substantive law of that state." Finally, "under *Erie* we cannot skirt the clear import of state decisional law solely because the result is harsh."

*Jackson v. Johns–Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.1986), *cert. denied* —— U.S. ——, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986).

In making an *Erie* guess without specific guidance from the Mississippi Supreme Court, this court must consider (1) lower state court decisions and Supreme Court dicta, (2) the general rule on the issue, (3) the rule in those other states referenced by Mississippi courts in formulating the substantive law of Mississippi, and (4) other legal sources including treatises and law review commentaries. *Id.* Using these sources, "we must attempt to predict state law, not create or modify it." *United Parcel Service v. Weben Industries, Inc.*, 794 F.2d 1005, 1008 (5th Cir.1986).

### C. Breach of an Oral–Employment Contract.

Since 1858, Mississippi has followed the rule that a contract to perform "particular services from time to time, to be paid for as the services are rendered, and without any agreement as to the time of its continuance, is determinable at the pleasure of either party." *Butler v. Smith & Tharp*, 35 Miss. 457, 464 (1858). Modern Mississippi cases have continued to follow this rule, holding that either the employer or employee may terminate the employment contract at will—whether for good reason, bad reason or no reasons. *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss.1981); *Montgomery Ward & Co. v. Skinner*, 200 Miss. 44, 25 So.2d 572 (1946); *Rape v. Mobile & Ohio Ry. Co.*, 136 Miss. 38, 100 So. 585 (1924). *See generally*, Comment, *The Unfairness of Federal Preemption of State Law Exceptions to the Employment-at-Will Rule and the Need for a Uniform National Remedy for Wrongful Discharge*, 55 *Miss.L.J.* 517, 522–24 (1985); Note, 51 *Miss.L.J.* 575, 576–98 (1981).

Recently, in the case of *Shaw v. Burchfield*, 481 So.2d 247 (Miss.1985), the Mississippi Supreme Court expressed disenchantment with the general rule of at-will employment. In upholding a written agreement allowing termination of employment in ten days notice by either party, the court stated:

> Were this a case where no employment contract established expressly the ground rules for termination and where the employer was calling upon the state

to furnish the law which authorized termination, we might well be charged to consider the at will termination rule.

*Shaw*, 481 So.2d at 254. To date, the court has considered only one subsequent case involving at-will termination, *Vestal v. Oden*, 500 So.2d 954 (Miss.1986), which also involved an express provision · for termination at-will in a written contract. *Vestal*, 500 So.2d at 958. Consequently, the court has not yet overturned the terminable at-will rule nor suggested a replacement. In the absence of further guidance from the Mississippi Supreme Court, this court is bound to follow the general rule on the issue. *Jackson*, 781 F.2d at 397.

The terminable at-will rule is not absolute, however, because it is subject to the following exceptions:

(1) Express provision in the contract to the contrary. may remove an employee from at-will status. *McGlohn v. Gulf and S.I. RR*, 179 Miss. 396, 174 So. 250 (1937) (upholding requirement of "trial" before termination under collective bargaining agreement).

(2) Furnishing of consideration by the employee in addition to services incident to employment may remove an employee from at-will status. *Rape*, 100 So. at 588 (holding that working through strike was service incident to employment and not additional compensation).

(3) Express action by the state legislature may remove an employee from at-will status. *Conley v. Board of Trustees of Grenada County Hospital*, 707 F.2d 175, 179–81 (5th Cir.1983) (ruling that where legislature did not specify whether board would be held to an "at will" or "for cause" standard, the adoption of employment guidelines by board would create "for cause" standard). *Compare* Miss. Code. Ann. § 21–3–5 (allowing municipalities to discharge police employees at will) *with* Miss. Code Ann. § 41–13–5 (allowing municipal-county authorities to terminate employees for inefficiency or "any other good cause").

(4) If the employer abuses the termination at-will rule to contravene an estab-

lished public policy, the employee may have a valid defense against termination. *Smith v. Atlas Off-Shore Boat Serv., Inc.,* 653 F.2d 1057, 1062–63 (5th Cir.1981) (awarding damages to seaman fired in retaliation for filing of a claim under the Jones Act). *But see Kelly,* 397 So.2d at 876–77 (declining to create retaliatory discharge exception under Mississippi's Workmen's Compensation Law).

Plaintiffs have argued that the supervisory guidelines are incorporated into oral contracts for employment, creating a just cause standard for dismissal under the first and second exceptions listed above. The defense contends that the plaintiffs were at-will employees as a matter of law. This court cannot state, as a matter of law, that the plaintiffs were at-will employees upon considering the undisputed existence of the supervisory guidelines governing termination and the plaintiffs' allegations of oral promises in light of prior Mississippi cases upholding contractual modifications to the at-will rule, *McGlohn,* 174 So. at 253–54, and giving binding effect to the adoption of a just-cause standard in supervisory guidelines by a governmental agency not held by statute to another standard, *Conley,* 707 F.2d at 179. There remains a genuine issue of material fact—whether the contracts for employment were modified to remove the plaintiffs from at-will status. Determination of whether a contract has subsequently been modified is properly a question for the jury. *Green v. Pendergraft,* 253 Miss. 891, 179 So.2d 831, 836 (1965). The motion for summary judgment on the breach of oral contract should accordingly be denied.

### D. Tortious Interference With an Employment Relationship.

■ Plaintiffs also contend that employees of the defendant tortiously interfered with the contracts of employment between the plaintiffs and the defendant. However, this action is brought not against the individual managers, but against the defendant corporation on an agency theory. Section 766 of *Restatement (2d) of Torts* (1978), adopted by Mississippi, provides that "one who intentionally and improperly interferes

with the performance of a contract ... between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract." This is an intentional tort. As such "there are ... recognized sets of circumstances under which the defendant's conduct is treated as justified, if he proves the requisite facts." *Restatement (2d) of Torts* Ch. 37 note (1978). Among the relevant factors are "(c) the interests of the other with which the actor's conduct interferes; (d) the interests sought to be advanced by the actor, ... (g) the relations between the parties."

Plaintiffs' contentions on tortious interference fail on two grounds. First, plaintiff has sued defendant on the grounds that defendant's agents have tortiously interfered with a relationship between plaintiff and defendant. The plain language of the Restatement imposes liability only upon tortious interference between *another* and a *third person.* In this action, the plaintiffs sue the defendant for interfering (through the agency of its managers) with a relationship between *another* and *itself.* Second, the Mississippi Supreme Court has recently held in two cases that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Vestal v. Oden,* 500 So.2d 954, 955–56 (Miss.1986); *Shaw v. Burchfield,* 481 So.2d 247 (Miss. 1985). Thus, in both of these cases, managers who terminated at-will employees were held not to be liable personally for that termination. Accordingly, the motion for summary judgment should be granted.

### E. Breach of Release Agreement.

■ The defendant has brought a counterclaim alleging that the bringing of the present action breached release agreements signed by the plaintiffs. The plaintiffs have stated that the release agreements were not explained to them by the

company before signing and that they were told that they would not receive severance pay unless they signed the agreements. The Mississippi Supreme Court has held that the issue of whether a release was void because of "an absence of good faith and full understanding of legal rights [and the] nature and effect of instrument were misrepresented" was a question of fact for a jury. *Willis v. Marlar,* 458 So.2d 722, 724 (Miss.1984). *See also City of Meridian v. Godwin,* 185 So.2d 433 (Miss.1966) (ruling jury question presented when employee with fourth grade education signed release that was not explained to him). The lack of explanation and the suggestion of economic coercion in the present case make it one which is appropriately submitted to the jury. The motion for summary judgment as to this issue is accordingly denied.

An order in conformance with this opinion shall issue.

## AMENDED OPINION AND ORDER GRANTING PARTIAL SUMMARY JUDGMENT

This opinion and order amends that portion of the court's June 22, 1987, opinion in the above-styled cause which relates to the breach of an oral employment contract. The court notes the Mississippi Supreme Court's recent opinion in *Perry v. Sears, Roebuck and Co.,* 508 So.2d 1086 (Miss. 1987). In light of that decision, the court now finds that defendant's motions for summary judgment as to the breach of oral contract claims are well taken and are, accordingly, granted.

### Facts

The asserted facts are as follows: Both plaintiffs were employed by the defendant in salaried positions. The defendant, a printing company, maintains a set of supervisory guidelines setting forth policy on terminations for cause and during a reduction in force. The company distributes an employee handbook to its hourly workers which contains provisions from those guidelines and which includes the statement: "this is not to be considered as an employment contract in any way." Copies of the supervisory guidelines are not provided to employees for their own use. Both plaintiffs allege that oral promises of indefinite employment were made to them. Dillingham alleges that he gave in consideration services beyond his employment responsibility in the form of service as volunteer chief of the company fire brigade, volunteer service on the company newsletter, and by working through union organizing campaigns. The defendant alleged in its memorandum in support of its motion for summary judgment that the service as fire brigade chief and on the newsletter occurred well before the alleged oral promise and transfer to engineering/maintenance coordinator. The work performance reviews included in the record support this contention. Samples alleges that in consideration for her promise that she was "a good employee."

### Conclusions of Law

■ On May 27, 1987, the Supreme Court of Mississippi considered a case in which a long-term employee of Sears, Roebuck and Company contended that the existence of an employment guidebook implied a contract which prevented the employer from terminating for other than cause. *See Perry v. Sears, Roebuck & Co.,* 508 So.2d 1086 (Miss.1987). The court refused to accept this contention, at least in part, because the description of the company's pension plans included the phrase "nor does it interfere in any way with the right of the company to discharge or terminate you at any time without regard to the effect of such discharge or termination may have on your rights under the plan." The court also distinguished its prior holding in *Robinson v. Bd. of Trustees of East Central Junior College,* 477 So.2d 1352 (Miss.1985), noting the fact that there a written contract expressly incorporated the policy handbook by stating that it would be "performed in accordance with the policies, rules and regulations of the employer." *Id.* at 1353.

The court in *Perry* ruled that *Robinson* did not apply because Sears had expressly

stated that it did not intend to waive its right to terminate the employee at will. The cause *sub judice* involves an express declaration by the employer of an intent not to incorporate policy provisions into an oral contract. The similarity between the two positions is sufficient that this court must hold, as a matter of law, that the policy guidebooks were not incorporated into the oral promises of continuing employment.

 The issue of consideration for the oral promises was not considered in the previous opinion because of the existence of the employment guidelines. This issue must now be addressed. The case of *Rape v. Mobile and Ohio Ry. Co.*, 136 Miss. 38, 100 So. 585 (1924), explicitly held that neither continuing faithful service nor service during a union organizing campaign would constitute adequate consideration for a promise of permanent employment. This means that no consideration exists as to Samples. It also means that Dillingham's service during the organizing campaigns is insufficient as consideration.

Dillingham's service as chief of the volunteer fire brigade and on the company newsletter may also come within *Rape's* discussion of service incident to employment. In fact, Dillingham agreed in deposition testimony that the defendant had the right to ask him to perform such services. Further, the documents submitted in this cause show that his service began well before the oral promise. It is a long-standing axiom of the common law that an act which imposed no legal obligation when it was performed will not support a subsequent promise. *See* 17 C.J.S. *Contracts* § 116 (1963); 1A *Corbin on Contracts* § 231 (1971). *Cf. Smythe v. Sanders*, 136 Miss. 382, 101 So. 435 (1924); *Woods v. Sturges*, 116 Miss. 412, 77 So. 186 (1917). Further, under *Rape*, there must be evidence that the consideration was given in exchange for the promise for permanent employment. No evidence has been submitted by the plaintiffs of a bargained-for exchange. None of the alleged considerations listed by either plaintiff is legally sufficient to support a promise of perma-

nent employment. Nor does the fact that the company had Dillingham and Samples sign a release imply the existence of a contract for permanent employment. The plain language of the release agreement refers to release from liability for back pay and vacation time as well as that arising from the termination. No mention is made of a contract for permanent employment and, therefore, none should be implied. The plaintiffs are at-will employees who can be fired for good reason, for bad reason, or for no reason. Their claims on breach of oral employment contracts seek a remedy unavailable to them under the laws of Mississippi.

Accordingly, IT IS ORDERED that defendant's motions for summary judgment as to the breach of oral employment contract claims be granted. This court's prior opinion granted summary judgment to the defendant as to the remainder of the plaintiff's claim. No claims from that complaint remain at issue.