**Leroy WINDFIELD, Plaintiff,**

v.

**GROEN DIVISION, DOVER CORPORATION, Defendant.**

**Civ. A. No. J87–0326(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 27, 1990.

Roger K. Doolittle, Jackson, Miss., Jay Smith, Cooper, Mitch, Crawford & Juykendall, Birmingham, Ala., for plaintiff.

Kenneth E. Milam, R. Pepper Crutcher, Jr., Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of defendant Groen Division, Dover Corporation (Groen) for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) or alternatively for summary judgment pursuant to rule 56. Plaintiff Lee Roy Windfield has responded to the motion and the court, in determining the motion, has considered the memoranda of authorities together with attachments submitted by the parties.

In September 1985, Windfield was hired by Groen as a production employee. He remained with Groen until January 7, 1987 when the company discharged him. During his employment with Groen, the United Steelworkers of America instituted a campaign to represent Groen's employees. Windfield became actively involved in the union's campaign drive. Pursuant to a petition by the union, the National Labor Relations Board scheduled a representation election for October 10, 1986.

The day before the election, Groen distributed documents to its employees, including Windfield, that stated:

### GUARANTEE

This is our PERSONAL GUARANTEE that *LeRoy Windfield*

will have a job with our Company even though at one time or another for various reasons you may have signed a union card, as long as you perform your work satisfactorily and we are economically able to operate this business successfully and work is available.

This GUARANTEE is given to you because of the FALSE RUMOR that you will lose your job if the Union loses the election. As you see by this, your own personal GUARANTEE, this is not true and it is an example of other FALSE STORIES AND TACTICS designed to fool and mislead you.

The Union CAN NOT GUARANTEE they will not strike or that they can get you more money. THE UNION CAN NOT GUARANTEE WHAT YOUR

COMPANY NOW PROVIDES FOR YOU!

This is our WRITTEN GUARANTEE TO YOU—compare it to the UNION SALES TALK and what the Union wants to COLLECT FROM YOU.

Date: 10/9/86 By Louise O'Sullivan /s/ Groen's President, Louise O'Sullivan, allegedly assured Windfield that the "guarantee" document was official and that her signature rendered the document enforceable. In the election, the employees voted against union representation, thirty-nine to thirty-six. Approximately three months after the election, Groen discharged Windfield.

Following his termination, Roy Brockman, a union staff representative, filed on Windfield's behalf an unsuccessful unfair labor practice charge against Groen. The first charge alleged that the certificates distributed by Groen "conveyed a promise of enhanced job security designed to frustrate and thwart the union organization effort, in violation of" § 8(a)(3) of the National Labor Relations Act; a second charge asserted that Groen had terminated Windfield's employment because of his membership and activities on behalf of the union. The NLRB refused to issue a complaint, finding that the evidence was insufficient to warrant further proceedings.

Subsequent to the NLRB claim, Windfield filed the present action alleging several theories of recovery, including breach of express and implied contract, promissory estoppel and fraud. These claims, to which the present motion is addressed, will be considered seriatim. For purposes of this motion, the court assumes the facts to be as alleged in Windfield's amended complaint.

BREACH OF CONTRACT

■ It is undisputed by the parties that Groen had the right to discharge plaintiff for any reason or no reason during the first thirteen months of his employment; the relationship between the parties was terminable at will. *See Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987). Plaintiff contends, though, that the issuance of the personal guarantee by Groen changed the fundamental character of that relationship. According to plaintiff, the guarantee represented Groen's promise that it would discharge him only upon the occurrence of one of the events described, and thus gave him job security and transformed the employment relationship from one that was at-will to one that was for a definite duration. Alternatively, Windfield claims that even if the employment guarantee could not be construed as a promise of continued employment, it was nevertheless a binding and enforceable contractual obligation since it was supported by adequate consideration. Windfield also maintains that Groen's guarantee, coupled with Windfield's continued employment, created an implied contract, which was breached. By the present motion, Groen seeks judgment as to plaintiff's breach of contract allegations on the basis of Mississippi's common law rule of employment at will.

In *Rape v. Mobile and O.R., Co.*, 136 Miss. 38, 100 So. 585 (1924), the Mississippi Supreme Court adopted the rule that "[i]n case the parties to a contract of service expressly agree that the employment shall be 'permanent,' the law implies, not that the engagement shall be for any definite period, but that, the term being indefinite, the hiring is merely at will." *Rape*, 100 So. at 587 (quoting 18 R.C.L. p. 509). A contract for "permanent" employment would be enforced, the court held, only if it were supported by a "valuable consideration outside the services which [the employee] renders from day to day." *Id.* It is Windfield's position that the personal guarantee was not a contract for permanent employment but was a contract for a definite duration. As such, he claims that the guarantee was enforceable according to its terms, without the necessity of independent consideration. Alternatively, he asserts that even if the guarantee is construed by the court to be a contract of permanent employment or one that is indefinite as to its term, it is nevertheless sufficient to remove him from an at-will employment status since plaintiff furnished sufficient consideration for Groen's offer. Two questions arise: (1) whether the personal guar-

antee was a promise of permanent employment or employment of an indefinite duration or was instead, as plaintiff claims, a contract for a definite term; (2) whether the guarantee, if not a contract for a definite term, was supported by adequate consideration.

In *Rape*, the court considered that a promise of "permanent" employment would be construed "to contemplate a continuous engagement to endure as long as the employer shall be engaged in business and have work for the employee to do, and the latter shall perform the service satisfactorily." *Id.* at 587. Windfield urges that Groen's personal guarantee is not a contract for permanent employment as was described by the *Rape* court because the personal guarantee purports to extend to Windfield employment for a definite and narrowly defined term, i.e., "for so long as [he] perform[ed] [his] work satisfactorily and [Groen] was economically able to operate [its] business successfully and work [was] available." According to his argument, Groen's promise to him was limited not only to the time during which the employer would be "engaged in the business," as in *Rape*, but went further to require that he remain employed so long as his employer, Groen, "[was] economically able to operate [its] business successfully." Groen's promise was therefore, according to plaintiff, more definite than the type of contract held by the *Rape* court to be unenforceable in the absence of independent consideration. In the court's opinion, plaintiff's position is untenable. There is no practical distinction between the contract described in *Rape* and the personal guarantee delivered by Groen. As such, the personal guarantee falls within that category of employment contracts which are terminable at will, unless supported by additional, independent consideration.

■ Because the contract was for what is considered "permanent" employment, the contract is unenforceable in the absence of "new consideration." And, it is the plaintiff's burden to prove consideration. *See Dabbs v. Int'l Minerals & Chem. Corp.*, 339 F.Supp. 654, 664 (N.D.Miss.

1972), *aff'd*, 474 F.2d 1344 (5th Cir.1973). Windfield suggests that the personal guarantee was, for his part, supported by the consideration of his not seeking another job and continuing to work for defendant while not required to do so. Under his reasoning, an employment relationship can be transformed from one of an at-will nature to one offering employee job security if the employer offers to restrict its ability to terminate the relationship and the employee does nothing more than remain an employee performing the same function for the same pay as before the employer's offer was made. While this view concededly finds support in some jurisdictions, *see, e.g., Hoffman–LaRoche, Inc. v. Campbell*, 512 So.2d 725 (Ala.1987), *Watson v. Idaho Falls Consolidated Hospitals, Inc.*, 111 Idaho 44, 720 P.2d 632 (1986), and *Woolley v. Hoffman–LaRoche, Inc.*, 99 N.J. 284, 491 A.2d 1257, *modified*, 101 N.J. 10, 499 A.2d 515 (1985), it is not the prevailing view nor is it, in the court's opinion, the view to which the Mississippi Supreme Court presently subscribes. The court recognizes that under the law of Mississippi, it is not the case that an employment relationship that begins as an at-will relationship necessarily must remains so. There is nothing to prevent the parties from reaching an agreement to the contrary after the relationship is formed. *See McGlohn v. Gulf and S.I.R.R.*, 179 Miss. 396, 174 So. 250 (1937). Such an agreement, though, must have consideration by both parties to be binding.

In *Rape*, the court observed that "want of mutuality of obligation will not render a contract of employment unenforceable if it is supported by an independent consideration, *that is, a consideration other than the obligation of service to be performed on the one hand and wages to be paid on the other;* but ... a contract for permanent employment which is not supported by such independent consideration is terminable at the pleasure of either party." *Rape*, 100 So. at 588 (emphasis supplied). The court there concluded that the plaintiff's continuing service, his having expended funds to move his family nearer to his work, and his having worked through a

union organizing campaign did not constitute adequate consideration for a promise of permanent employment. *Id.* More recently, in *Samples v. Hall of Mississippi, Inc.*, 673 F.Supp. 1413 (N.D.Miss.1987), the court, recognizing the continuing viability of the holding in *Rape*, concluded that an employee's having provided his service through union organization campaigns, having worked as volunteer chief of the company's fire brigade and having voluntarily served on the company newsletter did not constitute consideration for an alleged promise by the employer to employ him indefinitely. The court also rejected the claim of a second employee that she had provided consideration by being "a good employee." [1] *See also Saulsberry v. Atlantic Richfield Co.*, 673 F.Supp. 811, 816 (N.D.Miss.1987) (employment for indefinite term not supported by consideration above and beyond the provision of services for wages is viewed as employment at will). Indeed, it has been consistently held in Mississippi, as well as in the majority of other jurisdictions, that consideration is not "sufficient" or "adequate" or "additional" so as to remove the relationship from an at-will status unless it involves something more than the mere performance of job requirements, i.e., some detriment to the employee. *See, e.g., Engelstad v. Virginia Mun. Hosp.*, 718 F.2d 262, 266 (8th Cir. 1983) (employment contract terminable at will absent contractual understanding on duration or some consideration provided by employee in addition to duties of employment); *Blair v. CBS, Inc.*, 662 F.Supp. 947, 949 (S.D.N.Y.1987) (employee's actual commencement of employment and continued employment after receiving handbook purporting to offer job security held insufficient consideration to bind employer to terms therein); *Kittredge v. Parker Hannifin Corp.*, 597 F.Supp. 605 (W.D.Mich. 1984) ("sufficient consideration" to establish contract for permanent employment requires something in addition to simply performing regular activities required by employment agreement itself); *Gordon v. Matthew Bender & Co., Inc.*, 562 F.Supp. 1286, 1295 (N.D.Ill.1983) ("sufficient consideration" means consideration in addition to mere performance of regular services required by employment agreement itself).

 Since, in the opinion of the court, merely continuing to work in the same employment relationship does not constitute additional consideration sufficient to alter an at-will employment relationship, it is essential to plaintiff's cause that he plead and present evidence tending to demonstrate the existence of additional consideration, other than mere employment. Windfield has not alleged that he assumed any additional job responsibilities or that the nature of his service obligations was altered in any way upon his receiving Groen's personal guarantee. He does, however, allege in his amended complaint that in reliance on the guarantee, he ceased efforts to secure other employment. Because he considered that his continuation at work for Groen constituted sufficient consideration for his contract claims, he did not specifically allege the discontinuation of his job search as consideration to support his contract claims. In his brief, however, he suggests that it does constitute additional independent consideration to overcome any application of the employment-at-will rule. Plaintiff has not alleged that he actually forfeited another job offer, or even a likely prospect of any job. He does not dispute that his search for work, both before the guarantee and after his termination, was unsuccessful; he has neither received nor rejected any offer of employment, despite his job search. In sum, plaintiff does not dispute that he merely interrupted an unsuccessful job search. Accordingly, he could not reasonably argue that he made any sacrifice, minute or sub-

---

1. In *Shaw v. Burchfield*, 481 So.2d 247, 253 (Miss.1983), the court found that "the record ... contain[ed] no facts which suggest[ed] that the companies [had] promulgated any formal policy which might be given the legal effect of modifying the at will termination clauses of the ... contracts at issue...." The court further observed that neither was "there any credible showing that Shaw remained in the companies' employ in proximate reliance upon any such policy." In the court's opinion, that observation was nothing more than dictum and adds no support to plaintiff's cause.

stantial, as a result of the guarantee. In this court's opinion, his merely refraining from seeking other employment does not amount to sufficient consideration. *Cf. Smith v. Board of Educ. of Urbana School Dist. No. 116 of Champaign County, Ill.,* 708 F.2d 258, 263–64 (7th Cir.1983) (courts will enforce promise to employ for life or indefinite period only if employee makes some sacrifice he would not have made absent guarantee; foregoing another employment opportunity not sufficient sacrifice); *Page v. Carolina Coach Co.,* 667 F.2d 1156, 1158 (4th Cir.1982) (employee's merely relinquishing job and benefits as bus driver to assume nonunion position as dispatcher insufficient to provide consideration for alleged lifetime employment contract); *Stack v. Allstate Ins. Co.,* 606 F.Supp. 472, 476 (S.D.Ind.1985) (surrendering prior employment for new employment, without more, does not constitute adequate consideration sufficient to support imposition of restrictions on employer's ability to discharge employee). Plaintiff argues, curiously, that cases such as those cited are inapposite since the courts in those cases held "only" that giving up a job was not consideration sufficient to sustain contract claims in the context of at-will employments. It is evident, though, that foregoing other employment that actually exists is a greater sacrifice for the employee than giving up nothing more than a mere possibility—perhaps even a remote possibility—of other employment.

Finally, even if it could be said, for the sake of argument, that plaintiff's abandonment of a fruitless job search could amount to a sufficient independent consideration, he would nevertheless be foreclosed from reliance on that as a basis for enforcing the alleged contract. In *Rape,* the court, in holding that an employee's having expended sums to relocate his family nearer to his employment was not sufficient consideration, stated as follows:

> [T]here is no averment in the pleadings and no proof whatever that the railroad company had any knowledge or notice of the fact that it was necessary for the appellant to change his residence in order to accept the employment, or that any expense would be or had been incurred in so doing, and there is nothing in the record from which the conclusion or inference may be drawn that any such idea entered into the making of the contract.

*Rape,* 100 So. at 588. Similarly, plaintiff has not alleged here that Groen had any knowledge, or any reason to know, that plaintiff had been, or was even interested in seeking employment elsewhere. Thus, it could not reasonably be concluded that "any such idea entered into the making of the contract." *Id.* In sum, the court concludes that plaintiff has alleged no consideration "other than the obligation of service to be performed." *Rape,* 100 So. at 588. The alleged promise of employment in the guarantee is, therefore, unenforceable.[2]

Plaintiff charges that even should the court determine that his claim for breach of express contract must fail due to the failure of some contract formality, he has still stated a viable claim for breach of an implied employment contract. Even an implied contract, though, requires consideration, which is lacking in this case.

PROMISSORY ESTOPPEL

Plaintiff alleges that Groen, in issuing its personal guarantee, expected or

---

**2.** Plaintiff asserts in his brief that the personal guarantee itself invited satisfactory work performance and that his satisfactory work performance following issuance of the guarantee stands as consideration for the guarantee. According to plaintiff, because Groen expressly invited satisfactory work performance as a task that would activate the guarantee, it should now be estopped from relying upon any rule of contract construction that would render that performance insufficient as consideration for the guarantee. Plaintiff's argument apparently presupposes that his work prior to the guarantee was not satisfactory and that Groen promised him job security if his work improved, or perhaps to improve his job performance. There is no logic in such a position. Moreover, as one court has aptly observed, a condition of satisfactory or acceptable work performance could theoretically be implied in every employment contract; that, though, would not create a contract for continuous employment but rather the relationship would remain terminable at will. *Gordon v. Matthew Bender & Co., Inc.,* 562 F.Supp. 1286 (N.D.Ill.1983).

reasonably should have expected to induce plaintiff's continued work and confidence in job security such that he would forego a search for other employment. By issuing the guarantee, it is alleged, Groen also expected or should reasonably have expected plaintiff and other prospective members of the bargaining unit to reject union representation. The doctrine of promissory estoppel holds that "[a] promise which the promisor should reasonably expect to induce action for [sic] forbearance of a definite or substantial character on the part of the promisee and which does induce such action and forbearance is binding if injustice can be avoided only by the enforcement of the promise." *Sanders v. Dantzler*, 375 So.2d 774, 776 (Miss.1979) (quoting *Restatement of Contracts* § 90). The court has previously concluded, at least implicitly and now explicitly, that the abandonment—or mere interruption—of a fruitless job search is not "forbearance of a definite and substantial character." Plaintiff repeatedly insists in his memorandum that his cessation of a search for more secure employment had a "very definite and substantial value" to him. This argument, though, assumes that plaintiff's efforts would have proved successful if only he had continued to look, rather than continuing to work for Groen, as he did. That is, his position in this case proceeds from the premise that had he not relied on Groen's guarantee, he would have continued his job search and that search would have resulted in his obtaining another, more secure job, before his discharge. However, that premise is, as heretofore described, unsupported by any facts. Indeed, acceptance of plaintiff's position would necessitate an excursion into the realm of speculation and conjecture; that is, however, an area into which juries may not wander.

■ The court must also reject Windfield's allegation that the vote of Groen employees against union representation amounted to detrimental reliance sufficient to support his promissory estoppel cause of action. It is undisputed that Groen employees voted to reject union representation by a vote of thirty-nine to thirty-six. The complaint avers that the employees voted against union representation in reliance on the guarantee. However, Windfield has not alleged that he voted against the union; hence, there is nothing to indicate that he acted in the manner allegedly contemplated by Groen. Nor does he assert that his vote was or would have been determinative, or that a pro-union vote would have prevented his discharge.

## FRAUD

■ Several counts in plaintiff's amended complaint allege that Groen, through its guarantee and through assurances of its president relating to the guarantee, misrepresented that plaintiff would enjoy a greater level of job security and that the job security provided by the guarantee would be judicially enforceable. Plaintiff alleges that at the time it issued the guarantee, Groen had no intention of respecting the alleged job security representations in the guarantee and that as a consequence of his reliance on the representations, he abandoned his search for employment with greater job security and continued to work for Groen. To succeed in establishing his allegations of fraud, plaintiff must furnish proof, by clear and convincing evidence, of each of the following elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted upon by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury. *Martin v. Winfield*, 455 So.2d 762, 764 (Miss.1984). As the Mississippi Supreme Court has explained, the "question is not whether the court [thinks the plaintiff] was defrauded, but whether the evidence of fraud [is] so clear that no hypothetical reasonable juror hearing the proof could conclude otherwise." *Haygood v. First National Bank of New Albany*, 517 So.2d 553, 555 (Miss.1987). In the court's opinion, plaintiff's pleading and proof of reliance and consequent injury is highly spec-

ulative and patently insufficient to support his claims of fraud. Indeed, plaintiff has neither demonstrated nor even suggested the nature of any actual damage which might be said to have resulted from his alleged reliance on the Groen guarantee.

## CONCLUSION

Based on the foregoing, it is ordered that Groen's motion for judgment on the pleadings or, in the alternative, for summary judgment is granted.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure 58.

ORDERED.